## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| BASIC ENERGY SERVICES INC., *et al.*,[1] | ) Case No. 21-90002 (DRJ) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

## NOTICE OF FILING PLAN SUPPLEMENT
## FOR THE COMBINED DISCLOSURE STATEMENT AND JOINT PLAN OF
## LIQUIDATION OF BASIC ENERGY SERVICES, INC. AND ITS AFFILIATED
## DEBTORS PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE

**PLEASE TAKE NOTICE THAT** as contemplated by the *Combined Disclosure Statement and Joint Plan of Liquidation of Basic Energy Services, Inc., and its Affiliated Debtors Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 1266] (as may be amended, supplemented, or modified from time to time and including all exhibits and supplements thereto, the "Plan" or "Disclosure Statement" or "Plan and Disclosure Statement," as applicable),[2] the above-captioned debtors and debtors in possession (the "Debtors") file this plan supplement "the "Plan Supplement").

**PLEASE TAKE FURTHER NOTICE THAT** this Plan Supplement includes current drafts of the following documents (which continue to be negotiated consistent with the terms of the Plan and will be filed in substantially final form prior to the Effective Date), as may be modified, amended, or supplemented from time to time:

| | |
|---|---|
| **Exhibit A** | Liquidation Trust Agreement |
| **Exhibit B** | Liquidation Trust Promissory Note |
| **Exhibit C** | Retained Causes of Action |
| **Exhibit D** | Other Litigation Matters |

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Basic Energy Services, L.P. (1819); Basic Energy Services, Inc. (1194); C&J Well Services, Inc. (5684); KVS Transportation, Inc. (4882); Indigo Injection #3, LLC (7657); Basic Energy Services GP, LLC (1197); Basic Energy Services LP, LLC (1195); Taylor Industries, LLC (7037); SCH Disposal, L.L.C. (8335); Agua Libre Holdco LLC (3092); Agua Libre Asset Co LLC (1409); Agua Libre Midstream LLC (6701); and Basic ESA, Inc. (2279).  The Debtors' headquarters and service address for the purposes of these chapter 11 cases is 801 Cherry Street, Suite 2100, Fort Worth, Texas 76102.

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan and Disclosure Statement or the Disclosure Statement Order, as applicable.

**PLEASE TAKE FURTHER NOTICE THAT** The Debtors reserve all rights, with the consent of any applicable counterparties to the extent required under the Plan, to alter, amend, modify, or supplement the Plan Supplement and any of the documents contained therein in accordance with the terms of the Plan; provided that, if any document in this Plan Supplement is altered, amended, modified, or supplemented in any material respects prior to the Confirmation Hearing, the Debtors will file a redline of such document with the Court.

**PLEASE TAKE FURTHER NOTICE** that the documents contained in the Plan Supplement are integral to, and are considered part of, the Plan. If the Plan is approved, the documents contained in the Plan Supplement will be approved by the Court pursuant to the order confirming the Plan.

**PLEASE TAKE FURTHER NOTICE** that the Debtors will seek final approval of the Disclosure Statement and confirmation of the Plan at the Confirmation Hearing scheduled for **August 9, 2022, at 4:00 p.m., prevailing Central Time** before David R. Jones at the United States Bankruptcy Court, Courtroom 400, 515 Rusk Street, Houston, Texas, 77002.

**PLEASE TAKE FURTHER NOTICE** that the deadline for filing (a) objections to the Plan and (b) objections related to the assumption, rejection, or assumption and assignment of executory contracts and unexpired leases, including objections to cure amounts, is on **August 3, 2022, at 5:00 p.m., prevailing Central Time** (the "Objection Deadline"). Any objection to the Disclosure Statement or the Plan **must**: (a) be in writing; (b) conform to the Bankruptcy Rules, the Local Bankruptcy Rules, and any orders of the Court; (c) state, with particularity, the basis and nature of any objection to the Plan and, if practicable, a proposed modification to the Plan that would resolve such objection; and (d) be filed with the Court (contemporaneously with a proof of service) and served upon the following parties so as to be *actually received* on or before the Objection Deadline.

Respectfully submitted,

Houston, TX
June 29, 2022

<div style="margin-left:45%;">

/s/ *Veronica A. Polnick*
**JACKSON WALKER LLP**
Bruce J. Ruzinsky (TX Bar No. 17469425)
Matthew D. Cavenaugh (TX Bar No. 24062656)
Veronica A. Polnick (TX Bar No. 24079148)
1401 McKinney Street, Suite 1900
Houston, Texas 77010
Telephone: (713) 752-4200
Facsimile: (713) 752-4221
Email: bruzinsky@jw.com
Email: mcavenaugh@jw.com
Email: vpolnick@jw.com

*Counsel for the Debtors and Debtors in Possession*

</div>

## <u>Certificate of Service</u>

I certify that on June 29, 2022, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

/s/ *Veronica A. Polnick*
Veronica A. Polnick

**<u>EXHIBIT A</u>**

# LIQUIDATION TRUST AGREEMENT

This Liquidation Trust Agreement (the "Agreement") is made as of _____, 2022 by and among Basic Energy Services, Inc., Basic Energy Services, L.P., C&J Well Services, Inc., KVS Transportation, Inc., Indigo Injection #3, LLC, Basic Energy Services GP, LLC, Basic Energy Services LP, LLC, Taylor Industries, LLC, SCH Disposal, L.L.C., Agua Libre Holdco LLC, Agua Libre Asset Co LLC, Agua Libre Midstream LLC, and Basic ESA, Inc. (each a "Debtor" and, collectively, the "Debtors"), and David Dunn, solely in his capacity as the liquidation trustee (the "Liquidation Trustee"), and executed in connection with the Combined Disclosure Statement and Joint Plan of Liquidation of Basic Energy Services, Inc. and Its Affiliated Debtor dated June 28, 2022 [Docket No. 1269] (as the same has been or may be amended, modified, or supplemented, the "Plan")[1] filed in the case *In re Basic Energy Services, Inc., et al.*[2], Case No. 21-90002 (DRJ), United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court").

# RECITALS

WHEREAS, on August 17, 2021 each of the Debtors filed voluntary Chapter 11 petitions with the Bankruptcy Court; and

WHEREAS, the Bankruptcy Court approved the sale of substantially all of the Debtors' assets pursuant to section 363 of the Bankruptcy Code by entry of various orders (the "Sale Orders" as defined in the Plan) to various third parties (the "Purchasers" as defined in the Plan) (the "Sales"); and

WHEREAS, the Sales have closed; and

WHEREAS, on [_____], 2022, the Bankruptcy Court entered an order confirming the Plan (the "Confirmation Order"); and

WHEREAS, the Plan contemplates, on the Effective Date, (a) the creation of the Liquidation Trust (defined below) and the creation of the beneficial interests in the Liquidation Trust for Holders of Allowed Claims entitled to distributions from the Liquidation Trust as provided for in Plan, and (b) the Liquidation Trust will be vested with all of the Debtors' right, title and interest in all of the Liquidation Trust Assets, including without limitation, all of the Debtors' Assets and the right to prosecute, settle, withdraw or resolve in any manner any claims and rights that the Debtors may hold against any Entity, to be liquidated and distributed to the Liquidation Trust Beneficiaries, as set forth in the Plan; and

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed thereto in the Plan.

[2] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Basic Energy Services, L.P. (1819); Basic Energy Services, Inc. (1194); C&J Well Services, Inc. (5684); KVS Transportation, Inc. (4882); Indigo Injection #3 , LLC (7657); Basic Energy Services, GP, LLC (1197); Basic Energy Services LP, LLC (1195); Taylor Industries, LLC (7037); SCH Disposal, L.L.C. (8335); Agua Libre Holdco LLC (3092); Agua Libre Asset Co LLC (14090; Agua Libre Midstream LLC (6701); and Basic ESA, Inc. (2279). The Debtors' headquarters and service address for the purposes of the Chapter 11 Cases is 801 Cherry Street, Suite 2100, Fort Worth, Texas 76102.

WHEREAS, the Plan further contemplates that, on or as soon as reasonably practicable after the Effective Date, each of the Debtors shall cause all of their Assets and the Assets of their Estates to be transferred to the Liquidation Trust; and

WHEREAS, the Plan further contemplates that, pursuant to Treasury Regulation Section 301.7701-4(d), the Liquidation Trust shall be created for the primary purpose of: (a) administering the Liquidation Trust Assets; (b) resolving all Disputed Claims; (c) pursuing any claims and rights that the Debtors or their Estates may hold against any Entity; (d) making all distributions to the Liquidation Trust Beneficiaries provided for under the Plan, and (e) liquidating the Liquidation Trust Assets in an expeditious but orderly manner for the benefit of the Liquidation Trust Beneficiaries, with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to and consistent with the liquidating purpose of the Liquidation Trust and the Plan; and

WHEREAS, the Liquidation Trust is intended to qualify as a "grantor trust" for U.S. federal income tax purposes, pursuant to Sections 671-677 of the Internal Revenue Code of 1986, as amended (the "IRC"), with the Liquidation Trust Beneficiaries to be treated as the grantors of the Liquidation Trust and deemed to be the owners of the Liquidation Trust Assets (subject to the rights of creditors of the Liquidation Trust), and consequently, the transfer of the Liquidation Trust Assets to the Liquidation Trust shall be treated as a deemed transfer of those assets from the Debtors and the Estates to the Liquidation Trust Beneficiaries followed by a deemed transfer by such Liquidation Trust Beneficiaries to the Liquidation Trust for U.S. federal income tax purposes.

NOW, THEREFORE, pursuant to the Plan and the Confirmation Order, in consideration of the premises, the mutual agreements of the parties contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and affirmed, the parties hereby agree as follows:

## ARTICLE I
## DECLARATION AND PURPOSE OF THE TRUST

**1.1.** **Name of the Liquidation Trust**. The Liquidation Trust established hereby shall be known as the "Basic Energy Liquidation Trust" (referred to herein as the "Liquidation Trust" or "Trust").

**1.2.** **Creation and Purpose of the Liquidation Trust**. The Debtors and the Liquidation Trustee hereby create the Liquidation Trust for the primary purpose of liquidating and distributing the Liquidation Trust Assets to the Liquidation Trust Beneficiaries, in accordance with Treasury Regulation Section 301.7701-4(d) and other Tax Laws applicable to "liquidating trusts" (as defined in such section of the U.S. Treasury Regulations), with no objective to continue or engage in the conduct of any trade or business except to the extent reasonably necessary to, and consistent with, the purpose of the Trust, and in an expeditious but orderly manner, with no objective to continue or engage in the conduct of a trade or business. In particular, the Liquidation Trustee shall (a) make continuing efforts to collect and reduce the Liquidation Trust Assets to Cash and (b) make timely distributions and not unduly prolong the duration of the Liquidation Trust. The activities of the Trust shall be limited to those activities set forth in this Agreement and as

otherwise contemplated by the Plan. The Trust is intended to qualify as a "grantor trust" for U.S. federal income tax purposes (and any other comparable provisions of Tax Law) with the Liquidation Trust Beneficiaries treated as grantors and owners of the Liquidation Trust Assets. As used in this Agreement, the term "Tax Law" shall mean any statute, law, ordinance, regulation, rule, code, order, constitution, treaty, common law, judgment, decree, other requirement or rule of law of any governmental authority, in each case with respect to any federal, state, local or non-U.S tax or taxes.

      **1.3.**    **Declaration of Trust.** In order to declare the terms and conditions hereof, and in consideration of the confirmation of the Plan, the Debtors and the Liquidation Trustee have executed this Agreement and, effective on the Plan's Effective Date, hereby irrevocably transfer to the Liquidation Trust, all of the rights, title and interests of the Debtors in and to the Liquidation Trust Assets, to have and to hold unto the Liquidation Trust and its successors and assigns forever, under and subject to the terms of the Plan and the Confirmation Order for the benefit of the Liquidation Trust Beneficiaries and their successors and assigns as provided for in this Agreement, and in the Plan and Confirmation Order.

      **1.4.**    **Vesting of Liquidation Trust Assets.**

         (a)    Pursuant to the terms of the Plan, on the Effective Date, all Assets of the Estates, including the Retained Causes of Action, *i.e.*, the Liquidation Trust Assets, shall be vested in the Liquidation Trust, free and clear of any and all Liens, Claims, and Interests except as otherwise specifically provided in the Plan or in the Confirmation Order. The Liquidation Trust shall be authorized to obtain, liquidate, and collect all of the Liquidation Trust Assets of the Estates not in its possession on the Effective Date. Except as set forth in the first sentence of Section 1.4(c), the Liquidation Trustee shall have no duty to arrange for any of the transfers contemplated hereunder and shall be conclusively entitled to rely on the legality and validity of such transfers.

         (b)    In connection with the vesting and transfer of the Liquidation Trust Assets, the Liquidation Trustee shall stand in the same position as the Debtors with respect to any claim the Debtors and/or their Estates may have as to an attorney-client privilege, work-product doctrine, or any other privilege or confidentiality protections attaching to any documents or communications (whether written or oral) relating to the Liquidation Trust Assets and the Liquidation Trustee shall succeed to all rights of the Debtors and/or their Estates to hold, preserve, assert, be the beneficiary of or waive any such privilege or protection (collectively, "Privileges"). As of the Effective Date, all Privileges of the Debtors relating to the Liquidation Trust Assets shall be deemed transferred, assigned, and delivered by the Debtors to the Trust, without waiver or release, and shall vest with the Trust. No such Privilege shall be waived by disclosures to the Liquidation Trustee of the Debtors' documents, information, or communication subject to attorney-client privilege, work product protections, or other immunities (including those related to common interest or joint defense with third parties), or protections from disclosure held by the Debtors. The Debtors' Privileges relating to the Liquidation Trust Assets will remain subject to the rights of third parties under applicable law, including any rights arising from the common interest doctrine, the joint defense doctrine, joint attorney-client representation, or any agreement; *provided*, *however*, prior to waiving such privilege, the Liquidation Trustee shall provide such third party with any written notice to the

#95972226v4

extent required by any joint defense or common interest agreements as of the Petition Date. Any and all work product created by or on behalf of the Liquidation Trustee, the professionals, and their respective agents, representatives, and employees shall be deemed confidential to the extent that such work product is not protected by the attorney-client privilege, attorney work-product doctrine, or any other applicable privilege. In addition, any and all rights to conduct investigations pursuant to Bankruptcy Rule 2004 or any other law, rule, or order held by the Debtors prior to the Effective Date with respect to the Liquidation Trust Assets shall vest in the Trust from the Effective Date through the date of dissolution of the Trust.

(c)     To the extent any of the foregoing does not automatically occur on the Effective Date or is not effectuated through the Confirmation Order or this Agreement, the Debtors shall, on the Effective Date or such later date as may be requested by the Liquidation Trustee, execute such other and further documents as are reasonably necessary to effectuate all of the foregoing. The Liquidation Trustee may, after the Effective Date, abandon or otherwise not accept any assets that the Liquidation Trustee believes, in good faith, have no value or will be unduly burdensome to the Trust; *provided, further*, that no abandonment or non-acceptance shall have occurred, or be deemed to have occurred, without an express written statement of such abandonment or non-acceptance by the Liquidation Trustee.

**1.5.    Funding of the Trust.** The Liquidation Trust shall be funded, on the Effective Date, with (i) the Liquidation Trust Assets, as provided for in the Plan and in the Confirmation Order, and (ii) the Liquidation Trust Loan, on the terms and subject to the conditions set forth in the promissory note attached hereto as Exhibit [A] (the "Promissory Note"). The Liquidation Trustee shall comply with the Wind Down Budget set forth in the Plan. As set forth in the Plan and the Promissory Note, the Ad Hoc Group and the Liquidation Trust representative appointed by the Committee to the Liquidation Trust Oversight Committee shall have consent rights with respect to future debt incurrences by the Liquidation Trust. After the funding of the Trust Accounts on the Effective Date, each Trust Account will be funded by the Cash proceeds obtained through litigation or the disposition of the Liquidation Trust Assets. Notwithstanding anything set forth herein to the contrary, the line item in the Wind Down Budget relating to the GUC Claim Reconciliation shall not be amended or modified absent the consent of the Liquidation Trust Oversight Committee member appointed by the Committee.

**1.6.    Acceptance by Liquidation Trustee**. The Liquidation Trustee hereby accepts the trust imposed upon him by this Agreement and agrees to observe and perform that trust on and subject to the terms and conditions set forth in this Agreement, the Plan, and the Confirmation Order. In connection with and in furtherance of the purposes of the Liquidation Trust, the Liquidation Trustee hereby accepts the transfer of the Liquidation Trust Assets (other than those assets not otherwise abandoned pursuant to the terms of the Plan).

**1.7.    No Reversion to the Debtors**. Except as expressly provided in the Plan or under this Liquidation Trust Agreement, in no event shall any part of the Liquidation Trust Assets revert to or be distributed to the Debtors.

#95972226v4

## ARTICLE II
## ESTABLISHMENT OF THE TRUST

**2.1.    Incorporation of Plan**. The Plan and Confirmation Order are each hereby incorporated into this Agreement and made a part hereof by this reference; *provided*, *however*, to the extent that there is conflict between the provisions of this Agreement, the provisions of the Plan, and/or the Confirmation Order, each such document shall have controlling effect in the following order: (1) the Confirmation Order, (2) the Plan, and (3) this Agreement, *further provided* that no such provision or document shall jeopardize the status of the Trust as a "liquidating trust" for U.S. federal income tax purposes under Treasury Regulation Section 301.7701-4(d), or any successor provision thereof.

**2.2.    Transfer of Assets and Rights of the Trust**.

(a)    From and after the Effective Date, the Liquidation Trustee shall be deemed the representative of the Debtors' Estates pursuant to sections 1123(a)(5), (a)(7), and (b)(3)(B) of the Bankruptcy Code, and as such shall be vested with the authority and power (subject to the terms of this Agreement, the Plan, and the Confirmation Order) to, among other things: (i) administer, object to or settle any Claims; (ii) make distributions in accordance with the terms of the Plan and this Agreement; and (iii) carry out the provisions of the Plan related to the Trust. As the representative of the Debtors' Estates, in its capacity as trustee for the benefit of the Liquidation Trust Beneficiaries, the Liquidation Trustee will succeed to all of the rights and powers of the Debtors and their Estates with respect to all Causes of Action assigned and transferred to the Trust, and the Liquidation Trustee will be substituted and will replace the Debtors, their Estates, and any official committee appointed in these cases, in all such Causes of Action, whether or not such claims are pending in filed litigation as of the Effective Date. Without limiting the generality of the foregoing provisions, from and after the Effective Date, prosecution and settlement of all Retained Causes of Action and Avoidance Actions conveyed to the Trust shall be the sole responsibility of the Trust, and all rights, powers, and interests of the Debtors' Estates in respect of the Retained Causes of Action shall be transferred to and vest exclusively in the Trust, pursuant to the Plan, the Confirmation Order and this Agreement. From and after the Effective Date, the Liquidation Trustee shall have exclusive rights, powers, and interests to pursue, settle, or abandon such Causes of Action and Avoidance Actions as the sole representative of the Estates pursuant to section 1123(b)(3)(B) of the Bankruptcy Code. The Liquidation Trustee shall constitute a "trustee" under section 108 of the Bankruptcy Code and, notwithstanding entry of the Confirmation Order or occurrence of the Effective Date, shall have the benefits of the tolling provisions set forth in such section.

(b)    All Retained Causes of Action and Avoidance Actions that are not expressly released or waived under the Plan are reserved and preserved and shall vest in the Trust, and shall not be impacted or affected in any way by the confirmation of the Plan, the occurrence of the Effective Date, or the limited substantive consolidation of the Estates pursuant to Article [V(L)] of the Plan. No Person or Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Liquidation Trust Cause of Action against them as any indication that the Trust will not pursue any and all available Retained Causes of Action against them. No preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue

preclusion, claim preclusion, waiver, estoppel (judicial, equitable, or otherwise) or laches shall apply to any rights of the Liquidation Trust or Liquidation Trustee with respect to any Retained Causes of Action upon or after entry of the Confirmation Order or Effective Date based on the Disclosure Statement, the Plan, or the Confirmation Order or any other Final Order.

# ARTICLE III
# THE LIQUIDATION TRUSTEE

**3.1.    Appointment.** The Liquidation Trustee shall be appointed, pursuant to Bankruptcy Code section 1123(b)(3)(B), to assume his responsibilities on the Effective Date.  The Liquidation Trustee's appointment shall continue until the earlier of (a) the termination of the Liquidation Trust, or (b) the Liquidation Trustee's resignation, removal, death, or disability (meaning herein, incapacity resulting in the inability to perform services for three consecutive months or in the aggregate of 180 days during any 12 month period).

**3.2.    General Powers.**

(a)    Except as otherwise provided in this Agreement, the Plan, or the Confirmation Order, the Liquidation Trustee may control and exercise authority over the Liquidation Trust Assets, over the acquisition, management, and disposition thereof, and over the management and conduct of the affairs of the Liquidation Trust.  No Person dealing with the Liquidation Trust shall be obligated to inquire into the Liquidation Trustee's authority in connection with the acquisition, management, or disposition of the Liquidation Trust Assets. The Liquidation Trustee shall administer the Liquidation Trust, and its assets, and make Distributions from the proceeds of the Liquidation Trust in accordance with the Plan and this Agreement.

(b)    The Liquidation Trustee shall be the exclusive trustee of the Trust for purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 601(b)(3) pursuant to this Agreement, the Plan, and the Confirmation Order, until death, resignation, or discharge of the Liquidation Trustee and the appointment of a successor Liquidation Trustee in accordance with the terms of this Agreement.

**3.3.    Authority of the Liquidation Trustee.**    The Liquidation Trustee shall be authorized, empowered and directed to take all actions necessary to comply with the Plan and exercise and fulfill the duties and obligations arising thereunder, including, without limitation, to:

(a)    receive, manage, invest, supervise, protect, liquidate in an orderly manner, and convert to Cash the Liquidation Trust Assets;

(b)    withdraw, make Distributions and pay taxes and other obligations owed by the Trust from the funds held by the Trust in accordance with the Plan or applicable law;

(c)    to invest the Liquidation Trust Assets, including any earnings thereon or proceeds therefrom, as permitted by section 345 of the Bankruptcy Code or in other prudent investments; *provided, however*, that such investments are permitted to be made by a

6

"liquidating trust" within the meaning of Treasury Regulation Section 301.7701-4(d), as reflected therein, or under other applicable Tax Law;

(d)      to execute, deliver, file, and record contracts, instruments, releases, indentures, certificates, and other agreements or documents, and take such actions, as it may deem reasonably necessary or appropriate to effectuate and implement the terms and conditions thereof or of the Plan, which actions may include, but is not limited to, the creation of entities for the purpose of facilitating transactions between the Trust and other parties;

(e)      to raise additional funding for the Trust in order to (A) pursue the Retained Causes of Action and/or support distributions to Holders of Claims that receive a beneficial interest in the Liquidation Trust as provided for or contemplated in the Plan (such interest, a "Beneficial Interest"); and (B) support or facilitate any other function, duty or responsibility of the Trust or the Liquidation Trustee that is contemplated by the Plan, the Confirmation Order or this Agreement, in each case in accordance with this Agreement; *provided, however,* that any such additional funding shall be subject in all cases to the consent of the Ad Hoc Group and the Liquidation Trust representative appointed by the Committee;

(f)      to pay any and all statutory fees when due and payable, solely from Liquidation Trust Assets;

(g)      to limit the list of parties in interest receiving notice of documents pursuant to Bankruptcy Rule 2002 to (A) the Office of the United States Trustee; (B) the United States; and (C) those parties in interest who have filed, after the Effective Date, a renewed notice of appearance requesting receipt of documents pursuant to Bankruptcy Rule 2002; *provided, however*, that the Liquidation Trustee also shall serve any known parties directly affected by or having a direct interest in the particular filing in accordance with Local Rule 2002-1(b);

(h)      to establish, maintain and administer the Trust Accounts;

(i)      to maintain accounts, calculate and implement Distributions to holders of Beneficial Interests out of the Liquidation Trust Assets in accordance with the Plan;

(j)      to protect, and enforce the rights to, the Liquidation Trust Assets by any method deemed appropriate, including by judicial, administrative, arbitrative or other nonjudicial proceeding;

(k)      to appear on behalf of the Trust or holders of Beneficial Interests in any proceeding that may directly or indirectly affect the Liquidation Trust Assets or their value or the recovery of the holders of Beneficial Interests;

(l)      with respect to the Retained Causes of Action, to exercise, in a manner not inconsistent with the Plan, all power and authority that may be or could have been exercised, commence all proceedings that may be or could have been commenced and take all actions that may be or could have been taken by any member, officer, director or shareholder of the Debtors, with like effect as if authorized, exercised, and taken by unanimous action of such officers, directors, and shareholders;

#95972226v4

(m)     to prosecute, compromise, adjust, arbitrate, sue on or defend, abandon, dismiss, or otherwise resolve or settle, in accordance with the terms hereof, claims in favor of, or against, the Trust, including but not limited to, the Retained Causes of Action;

(n)     to conduct investigation pursuant to Bankruptcy Rule 2004 or any other law, rule, or order, as may have been conducted by the Debtors prior to the Effective Date with respect to the Liquidation Trust Assets;

(o)     to make payments to the Liquidation Trust Beneficiaries in accordance with the terms of this Agreement, the Plan, and the Confirmation Order;

(p)     except to the extent a Claim has been previously Allowed, to control and effectuate the Claims reconciliation process (including Allowance or Disallowance of Claims), in accordance with the terms of the Plan and Confirmation Order, including to object to, seek to subordinate, compromise, estimate, or settle any and all Claims against the Debtors;

(q)     to determine the Distribution Date and make Distributions to holders of Allowed Claims and Interests in accordance with the Plan, including Articles [VII] and [VIII] thereof, and the Confirmation Order, and to reserve Cash or property on account of Disputed Claims, in accordance with Article [VII.D] of the Plan;

(r)     to determine and satisfy any and all liabilities created, incurred, or assumed by the Trust;

(s)     to pay all reasonable obligations and out-of-pocket expenses of the Trust, including Liquidation Trust Expenses, and make other payments relating to the Liquidation Trust Assets, in each case exclusively from the Liquidation Trust Assets;

(t)     prior to dissolution of the Debtors, to file with the Bankruptcy Court all quarterly reports, in a form reasonably acceptable to the U.S. Trustee, when due;

(u)     to file, if necessary, any and all required federal, state and local tax and informational returns required with respect to the Trust as a grantor trust pursuant to Treasury Regulation Section 1.671-4(a) or other applicable Tax Law, make tax elections by and on behalf of the Trust and pay taxes (including, without limitation, federal, state, local or non-U.S. taxes), if any, properly payable by the Trust, which taxes shall be paid exclusively from the Trust and Liquidation Trust Assets, and to take any and all actions that may be necessary or appropriate to comply with any withholding and reporting requirements imposed by applicable Tax Law;

(v)     to obtain and maintain insurance coverage with respect to the liabilities and obligations of the Liquidation Trustee and the Trust (in the form of an errors and omissions policy, fiduciary policy, or otherwise);

(w)     to obtain and maintain insurance coverage with respect to real and personal property which may become Liquidation Trust Assets;

(x)     to retain and pay such third parties, including, one or more paying agents or counsel, as the Liquidation Trustee may deem necessary or appropriate in its sole and reasonable discretion to assist the Trust in carrying out its powers and duties under this Agreement; and

(y)     to exercise all powers vested in Debtors, the Trust, or the Liquidation Trustee pursuant to the Bankruptcy Code, the Plan, Bankruptcy Court order, or as may be necessary, proper and appropriate to carry out the provisions of the Plan or this Agreement.

**3.4.     Limitations on the Liquidation Trustee's Authority**.  Notwithstanding anything under applicable law, this Agreement or the Plan to the contrary, the Liquidation Trustee's discretion and authority to engage in conduct requiring the approval of the Oversight Committee as set forth in this Agreement, shall be subject to the limitations contained in Section 11.4 hereof. Further, the Liquidation Trustee shall not do or undertake any of the following:

(a)     Take or fail to take, any action that would jeopardize treatment of the Liquidation Trust as a "Liquidating Trust" for U.S. federal income tax purposes under Treasury Regulation Section 301.7701-4(d), or any successor provision thereof.

(b)     Receive transfers of any listed stocks or securities, any readily-marketable assets or any operating assets of a going business, except as is absolutely necessary or required under the Plan or the Confirmation Order; provided, however, that in no event shall the Liquidation Trustee receive any such investment that would jeopardize treatment of the Liquidation Trust as a "Liquidating Trust" for U.S. federal income tax purposes under Treasury Regulation Section 301.7701-4(d), or any successor provision thereof.

(c)     Exercise any investment power other than the power to invest in demand and time deposits in banks or savings institutions, temporary investments such as short term certificates of deposit or Treasury bills, money market mutual funds that are registered with the Securities and Exchange Commission under the Investment Company Act of 1940, as amended, and operated in accordance with Rule 2a-7 and that at the time of such investment are rated Aaa by Moody's and/or AAAm by S&P, including such funds for which the Liquidation Trustee or an affiliate provides investment advice or other services, or other investments that a "liquidating trust" within the meaning of Treasury Regulation Section 301.7701-4(d) may be permitted to hold, pursuant to the Treasury Regulations or any modification in the IRS guidelines, whether set forth in IRS rulings, revenue procedures, other IRS pronouncements or otherwise.

(d)     Permit the Liquidation Trust to receive or retain Cash or Cash equivalents in excess of a reasonable amount necessary to meet claims and contingent liabilities (including without limitation expected expenses) or to maintain the value of its assets during liquidation.

(e)     Receive or retain any operating assets of a going business, a partnership interest in a partnership that holds operating assets, or fifty percent (50%) or more of the stock of a corporation with operating assets, except as is absolutely necessary or required under the Plan or the Confirmation Order; provided, however, that in no event shall the Liquidation

#95972226v4

Trustee receive or retain any such asset or interest that would jeopardize treatment of the Liquidation Trust as a "Liquidating Trust" for U.S. federal income tax purposes under Treasury Regulation Section 301.7701-4(d), or any successor provision thereof.

**3.5.** **Discretion**. Subject to the limitations contained in Section 11.4 below, the Liquidation Trustee shall have absolute discretion to pursue, or not pursue, any and all claims, rights, or causes of action, as it determines is in the best interests of the Beneficiaries and consistent with the purposes of the Trust, and shall have no liability for the outcome of its decisions, except as set forth herein and in the Plan. Except as expressly set forth in the Plan, and subject to his duties and obligations, the Liquidation Trustee, on behalf of the Trust, shall have absolute discretion in the administration of the Trust and Liquidation Trust Assets. The Liquidation Trustee may incur any reasonable and necessary expenses in liquidating and converting the Liquidation Trust Assets to Cash. Unless specifically stated otherwise herein, the Liquidation Trustee shall not be required to obtain Bankruptcy Court approval with respect to any proposed action or inaction authorized in this Agreement or specifically contemplated in the Plan.

**3.6.** **Retention of Professionals**. The Liquidation Trustee may retain and compensate attorneys and other professionals (including any professional who represented a party in interest in the Debtors' Bankruptcy Cases) to assist in its duties as the Liquidation Trustee on such terms as the Liquidation Trustee deems appropriate, whether on an hourly, contingency fee or other basis, including, without limitation, accountants, auditors, attorneys, tax professionals, consultants, and other professionals, and to pay the fees and charges incurred by the Liquidation Trustee on the Trust's behalf before or after the Effective Date for fees and expenses of such professionals (including those retained by the Liquidation Trustee), disbursements, expenses, or related support services relating to the Trust or as otherwise provided in this Agreement, *provided* that any such professionals shall be compensated solely from the Trust and in no event shall the Liquidation Trustee or any of its professionals have or make any claim for reimbursement of fees or expenses against any Person other than the Liquidation Trustee (not individually, but solely in its capacity as the Liquidation Trustee) or any property other than the Trust and the Liquidation Trust Assets, *provided further* that, notwithstanding anything to the contrary herein, subject to the consent of the Liquidation Trust Oversight Committee member appointed by the Committee**,** the Liquidation Trustee shall retain attorneys and/or other professionals to assist it in connection with the general unsecured claims reconciliation process described in Section 3.3(p) of this Agreement. The Liquidation Trustee shall be entitled to rely, in good faith, on the advice of its retained professionals. Accordingly, the Liquidation Trustee, on behalf of the Liquidation Trust, may employ, without further order of the Bankruptcy Court, any professional to assist in carrying out the Liquidation Trustee's duties under the Plan, Confirmation Order, and this Agreement and may compensate and reimburse the reasonable expenses of the Liquidation Trust Advisors from the Liquidation Trust Assets in accordance with the Plan and this Agreement without further Order of the Bankruptcy Court.

**3.7.** **Compensation of Liquidation Trustee and its Professionals**.

(a) The Liquidation Trustee shall be entitled to receive reasonable compensation in connection with its performance of its duties at an hourly rate of $[____], plus the reimbursement of reasonable out-of-pocket expenses. Any successor to the

10

Liquidation Trustee shall also be entitled to reasonable compensation in connection with the performance of its duties, which compensation may be different from the terms provided herein and shall be approved by the Oversight Committee, plus the reimbursement of reasonable out-of-pocket expenses.

(b)    On or before the last day of each month following the month for which compensation or reimbursement is sought, the Liquidation Trustee and each of its professionals (unless any such professionals, the Liquidation Trustee, and the Oversight Committee agree to different treatment) seeking compensation shall serve a monthly statement on (i) the Oversight Committee, in the case of the Liquidation Trustee, or (ii) both the Liquidation Trustee and the Oversight Committee, in the case of professionals retained by the Liquidation Trustee. The Oversight Committee (and the Liquidation Trustee, as applicable) will have ten (10) days from the date such statement is received to review the statement and object to such statement by serving an objection on the Liquidation Trustee, the Oversight Committee, and the party seeking compensation setting forth the precise nature of the objection and the amount at issue.  At the expiration of the ten (10) day period, the Liquidation Trustee shall pay from Liquidation Trust Assets 100% of the amounts requested, except for the portion of such fees and disbursements to which any objection has been made. The parties shall attempt to consensually resolve objections, if any, to any monthly statement. If the parties are unable to reach a consensual resolution of any such objection, the party who received an objection to its fees and costs may seek payment of such fees and costs by filing a motion with the Bankruptcy Court and providing notice to the Liquidation Trustee.  If the Liquidation Trustee or any professional fails to submit a monthly statement, it shall be ineligible to receive payment of fees and expenses therefore as provided in this Agreement until the monthly statement is submitted.

3.8.    **General Duties, Obligations, Rights and Benefits of the Liquidation Trustee.** The Liquidation Trustee shall have all duties, obligations, rights and benefits assumed by, assigned to, or vested in the Liquidation Trust under the Plan, the Confirmation Order, this Agreement and any other agreement entered into pursuant to or in connection with the Plan.  Such duties, obligations, rights and benefits include, without limitation, all duties, obligations, rights, and benefits relating to the collection and liquidation of the Liquidation Trust Assets, administration of Claims, satisfaction of claims of creditors to the extent provided in the Plan, distributions to Liquidation Trust Beneficiaries, administration of the Liquidation Trust  and any other duties, obligations, rights and benefits reasonably necessary to accomplish the purpose of the Liquidation Trust  under the Plan, the Confirmation Order, this Agreement and any other agreement entered into pursuant to or in connection with the Plan.  Without limiting the duties, obligations, rights and benefits of the Liquidation Trustee under this Section or any other provision of this Agreement, the Liquidation Trustee shall have all the duties, obligations, rights, and benefits assigned to the Liquidation Trustee under the Confirmation Order.

3.9.    [**Reserved**.]

3.10.    **Replacement of the Liquidation Trustee**. The Liquidation Trustee may resign at any time upon thirty (30) days' written notice delivered to the Oversight Committee. If the Liquidation Trustee resigns from its position hereunder, subject to a final accounting, such Liquidation Trustee shall be entitled to all accrued but unpaid fees, expenses, and other

compensation to the extent incurred, arising or relating to events occurring before such resignation, and any out-of-pocket expenses reasonably incurred in connection with the transfer of all powers and duties to the successor Liquidation Trustee. The Liquidation Trustee may be removed by the Oversight Committee only for cause, which shall be defined as fraud, gross negligence, or willful misconduct. In the event of the resignation or removal of the Liquidation Trustee, the Oversight Committee shall, by majority vote, designate a person to serve as a successor Liquidation Trustee. Upon its appointment, the successor Liquidation Trustee, without any further act, shall become fully vested with all of the rights, powers, duties and obligations of its predecessor and all responsibilities of the predecessor Liquidation Trustee relating to the Liquidation Trust shall be terminated. In the event the Liquidation Trustee's appointment terminates by reason of termination (except for termination with cause), death or disability (as defined above), such Liquidation Trustee shall be immediately compensated for all reasonable fees and expenses accrued through the effective date of termination, whether or not previously invoiced. The provisions of Article [V] of the Plan shall survive the resignation or removal of any Liquidation Trustee.

**3.11.    Successor Liquidation Trustee**.    Any successor to the initial Liquidation Trustee shall execute an instrument accepting such appointment and shall file such acceptance with the Trust records and with the Bankruptcy Court. The resigning Liquidation Trustee shall duly assign, transfer, and deliver to such successor Liquidation Trustee all Liquidation Trust Assets held by such resigning Liquidation Trustee under the Plan or this Agreement and shall, as directed by the Bankruptcy Court or as reasonably requested by the successor Liquidation Trustee, execute and deliver an instrument or instruments conveying and transferring to such successor Liquidation Trustee upon the Trust herein expressed, all the liabilities, duties, powers, rights, title, discretion, and privileges of such resigning Liquidation Trustee. Immediately upon the acceptance of appointment by any successor trustee, all rights, powers, duties, authority, and privileges of the predecessor Liquidation Trustee will be vested in and undertaken by the successor trustee without any further act; the predecessor Liquidation Trustee and any director, officer, affiliate, employee, employer, professional, agent or representative of the predecessor Liquidation Trustee shall have no further liability or responsibility with respect thereto. A successor Liquidation Trustee shall have no duty to examine or inquire into the acts or omissions of its immediate or remote predecessor and no successor Liquidation Trustee shall be in any way liable for the acts or omissions of any predecessor Liquidation Trustee unless a successor Liquidation Trustee expressly assumes such responsibility. A predecessor Liquidation Trustee shall have no liability for the acts or omissions of any immediate or subsequent successor Liquidation Trustee for any events or occurrences subsequent to the cessation of its role as Liquidation Trustee.

**3.12.    Liquidation Trust Continuance.** The death, disability, resignation, or removal of the Liquidation Trustee shall not terminate the Liquidation Trust or revoke any existing agency created by the Liquidation Trustee pursuant to this Agreement or invalidate any action theretofore taken by the Liquidation Trustee, and the successor Liquidation Trustee agrees that the provisions of this Agreement shall be binding upon and inure to the benefit of the successor Liquidation Trustee and all its successors or assigns.

#95972226v4

## ARTICLE IV
## LIABILITY OF LIQUIDATION TRUSTEE

**4.1.    Standard of Care; Exculpation.** Neither the Liquidation Trustee, the Members of the Oversight Committee, nor any director, officer, affiliate, employee, employer, professional, agent or representative of the Liquidation Trustee or any Member of the Oversight Committee (the "Exculpated Party" and collectively, the "Exculpated Parties") shall be liable for losses, claims, damages, liabilities, obligations, settlements, proceedings, suits, judgments, causes of action, litigation, actions, investigations (whether civil or administrative and whether sounding in tort, contract or otherwise), penalties, costs, and expenses, including reasonable fees and disbursements (collectively referred to herein as "Losses") whether or not in connection with litigation in which any Exculpated Party is a party, or enforcing this Agreement (including these exculpation provisions), as and when imposed on the Liquidation Trustee, incurred, caused by, relating to, based upon or arising out of (directly or indirectly) the Liquidation Trustee's or the Oversight Committee's execution, delivery, and acceptance of or the performance or nonperformance of its powers, duties and obligations under this Agreement, the Plan, or the Confirmation Order or as may arise by reason of any action, omission or error of an Exculpated Party; provided, however, that the foregoing limitation shall not apply to any Losses suffered or incurred by any holder of a Claim or Interest or Liquidation Trust Beneficiary that are found in a final judgment by a court of competent jurisdiction (not subject to further appeal) to have resulted primarily and directly from the fraud, gross negligence or willful misconduct of such Exculpated Party.  Every act taken or omitted, power exercised or obligation assumed by the Liquidation Trust or any Exculpated Party pursuant to the provisions of this Agreement shall be held to be taken or omitted, exercised, or assumed, as the case may be, by the Liquidation Trust  or any Exculpated Party acting for and on behalf of the Liquidation Trust  and not otherwise; provided, however, that none of the foregoing Entities or Persons are deemed to be responsible for any other such Entities' or Persons' actions or inactions.  Except as provided in the first proviso of the first sentence of this Section 4.1, every Person, firm, corporation, or other Entity contracting or otherwise dealing with or having any relationship with the Liquidation Trust  or any Exculpated Party shall have recourse only to the Liquidation Trust Assets for payment of any liabilities or other obligations arising in connection with such contracts, dealings or relationships and the Liquidation Trust and the Exculpated Parties shall not be individually liable therefore.  In no event shall the Liquidation Trustee or any Exculpated Party be liable for indirect, punitive, special, incidental, or consequential damage or loss (including but not limited to lost profits) whatsoever, even if the Liquidation Trustee or any Exculpated Party has been informed of the likelihood of such loss or damages and regardless of the form of action.  Notwithstanding anything to the contrary herein, in no event shall the liability of the Liquidation Trustee or any Exculpated Party under this Liquidation Trust Agreement exceed the total amount of fees paid to the Liquidation Trustee or any Exculpated Party under this Agreement.

**4.2.    Indemnification**.

(a)    Except as otherwise set forth in the Plan or Confirmation Order, the Liquidation Trustee, the Members of the Oversight Committee and any director, officer, affiliate, employee, employer, professional, agent, or representative of the Liquidation Trustee or the Members of the Oversight Committee (each, an "Indemnified Party" and collectively, the "Indemnified Parties") shall be defended, held harmless and indemnified from time to

#95972226v4

time by the Liquidation Trust against any and all losses, claims, damages, liabilities, penalties, obligations and expenses, including the costs for counsel or others in investigating, preparing, or defending any action or claim, whether or not in connection with litigation in which any Indemnified Party is a party, or enforcing this Agreement (including these indemnity provisions), as and when imposed on the Liquidation Trustee, incurred, caused by, relating to, based upon or arising out of (directly or indirectly) the Liquidation Trustee's or the Oversight Committee's execution, delivery, and acceptance of or the performance or nonperformance of its powers, duties, and obligations under this Agreement, the Plan, or the Confirmation Order or as may arise by reason of any action, omission, or error of an Indemnified Party; provided, however, such indemnity shall not apply to any such Losses to the extent it is found in a final judgment by a court of competent jurisdiction (not subject to further appeal) to have resulted primarily and directly from the fraud, gross negligence, or willful misconduct of such Indemnified Party. Satisfaction of any obligation of the Liquidation Trust arising pursuant to the terms of this Section shall be payable only from the Liquidation Trust Assets, shall be advanced prior to the conclusion of such matter and such right to payment shall be prior and superior to any other rights to receive a distribution of the Liquidation Trust Assets.

(b)     Subject to the availability of Liquidation Trust Assets, the Liquidation Trust shall promptly pay to the Indemnified Party the expenses set forth in subparagraph (a) above upon submission of invoices therefore on a current basis.  Each Indemnified Party hereby undertakes, and the Liquidation Trust hereby accepts its undertaking, to repay any and all such amounts so paid by the Liquidation Trust if it shall ultimately be determined that such Indemnified Party is not entitled to be indemnified therefore under this Agreement.

**4.3.     Reliance by Liquidation Trustee on Documents or Advice of Counsel.** Except as otherwise provided in this Agreement, the Liquidation Trustee, and any director, officer, affiliate, employee, employer, professional, agent or representative of the Liquidation Trustee may rely, and shall be protected from liability for acting, upon any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order or other paper or document reasonably believed by the Liquidation Trustee to be genuine and to have been presented by an authorized party. The Liquidation Trustee shall not be liable for any action taken or suffered by the Liquidation Trustee in reasonable reliance upon the advice of counsel or other professionals engaged by the Liquidation Trustee. The Liquidation Trustee shall be fully indemnified by the Liquidation Trust for or in respect of any action taken, suffered or omitted by it and in accordance with such advice or opinion.

**4.4.**     The provisions of this Article IV shall survive the termination of this Agreement and the death, resignation, removal, Liquidation, dissolution, or replacement of the Liquidation Trustee.

### ARTICLE V
### GENERAL PROVISIONS CONCERNING ADMINISTRATION OF THE LIQUIDATION TRUST

**5.1.     Liquidation Trust Reserve.** The Liquidation Trust may, at its discretion, establish the Liquidation Trust Reserve as set forth in Section 8.2 of this Agreement.

#95972226v4

**5.2.**     **Register of Liquidation Trust Beneficiaries.** The Liquidation Trust shall maintain at all times a register of the names, distribution addresses, amounts of Allowed Claims, and the ratable interests in the Liquidation Trust of the Liquidation Trust Beneficiaries (the "Register"). The initial Register shall be delivered to the Liquidation Trustee by the Debtors and shall be based on the list of holders of Claims maintained by Kroll Restructuring Administration, LLC as of the Effective Date and prepared in accordance with the provisions of the Plan and the Confirmation Order. All references in this Agreement to holders of beneficial interests in the Liquidation Trust shall be read to mean holders of record as set forth in the Register maintained by the Liquidation Trustee and shall include Holders of Allowed Secured Notes Deficiency Claims who are beneficial holders of Claims in Class 4, who hold their position through a broker, bank, or other nominee. The Liquidation Trustee shall cause the Register to be kept at its office or at such other place or places as may be designated by the Liquidation Trustee from time to time.

     (a)     **Books and Records.** On the Effective Date, the Debtors shall transfer and assign to the Liquidation Trust full title to, and the Liquidation Trust shall be authorized to take possession of, all of the books and records of the Debtors. The Liquidation Trust shall have the responsibility of storing and maintaining books and records transferred hereunder until the Chapter 11 Cases are closed, after which time such books and records may, to the extent not prohibited by applicable law, be abandoned or destroyed without further Bankruptcy Court order. For the purpose of this Section 5.2, books and records include computer generated or computer maintained books and records and computer data, as well as electronically generated or maintained books and records or data, along with books and records of the Debtors maintained by or in possession of third parties and all of the claims and rights of the Debtors in and to their books and records, wherever located.

     (b)     The Liquidation Trustee also shall maintain in respect of the Liquidation Trust and the Liquidation Trust Beneficiaries, books and records relating to the Liquidation Trust Assets and any income or proceeds realized therefrom and the payment of expenses of and claims against or assumed by the Liquidation Trust in such detail and for such period of time as may be necessary to enable it to make full and proper reports in respect thereof. Except as expressly provided in this Agreement, the Plan, or the Confirmation Order, or as may be required by applicable law (including securities law), nothing in this Agreement is intended to require the Liquidation Trust to file any accounting or seek approval of any court with respect to the administration of the Liquidation Trust, or as a condition for making any payment or distribution out of the Liquidation Trust Assets.

**5.3.**     **Interim Reports to Liquidation Trust Beneficiaries.** The Liquidation Trust shall file with the Bankruptcy Court semi-annual reports, no later than 45 days after June 30 and December 31 of each calendar year (which reports may be the post-confirmation quarterly reports required by the Office of the United States Trustee), regarding the liquidation or other administration of the Liquidation Trust Assets and other matters relating to the implementation of the Plan, and will make such reports available to any Liquidation Trust Beneficiary upon such Liquidation Trust Beneficiary's written request (email being sufficient).

**5.4.**     **Final Accounting of Liquidation Trustee**. The Liquidation Trustee (or any such successor Liquidation Trustee) shall, within ninety (90) days after the termination of the

Liquidation Trust or the death, dissolution, resignation or removal of the Liquidation Trustee, render an accounting containing at least the following information:

(a)      A description of the value of the Liquidation Trust Assets.

(b)      A summarized accounting in sufficient detail of all gains, losses, receipts, disbursements and other transactions in connection with the Liquidation Trust and the Liquidation Trust Assets during the Liquidation Trustee's term of service, including their source and nature.

(c)      The ending balance of all Liquidation Trust Assets as of the date of the accounting, including the Cash balance on hand and the name(s) and location(s) of the depository or depositories where the Cash is kept.

(d)      All known liabilities of the Liquidation Trust.

(e)      All pending actions.

**5.5.    Filing of Accounting.** The final accounting described in Section 5.4 shall be filed with the Bankruptcy Court and all Liquidation Trust Beneficiaries shall have notice that the final accounting has been filed and an opportunity to have a hearing on the approval of the accounting and the discharge and release of the Liquidation Trustee.

## ARTICLE VI
## BENEFICIAL INTERESTS AND LIQUIDATION TRUST BENEFICIARIES

**6.1.    Trust Beneficial Interests.** Each holder of an Allowed Claim entitled to distributions from the Liquidation Trust shall be entitled to receive beneficial interests in accordance with the treatment of such Claim under the Plan, and shall be entitled to distributions as set forth in the Plan; provided however, that except to the extent required to maintain the status of the Liquidation Trust as a "liquidating trust" for U.S. federal income tax purposes under Treasury Regulation Section 301.7701-4(d), the Liquidation Trust shall have no obligations to make distributions to holders of Allowed Claims that do not timely respond to requests for tax identification information as set forth in the Plan.

**6.2.    Interest Beneficial Only.** Ownership of a beneficial interest in the Liquidation Trust shall not entitle any Liquidation Trust Beneficiary to any title in or to the Liquidation Trust Assets or to any right to call for a partition or division of the Liquidation Trust Assets or to require an accounting.

**6.3.    Evidence of Beneficial Interest.** Ownership of a beneficial interest in the Liquidation Trust shall not be evidenced by any certificate, security or receipt or in any other manner whatsoever, except as maintained on the books and records of the Liquidation Trust by the Liquidation Trustee, which may be the Register.

**6.4.    Exemption from Registration.** The parties hereto intend that the rights of the holders of the beneficial interests arising under this Agreement shall not be "securities" under applicable laws, but none of the parties hereto represents or warrants that such rights shall not be

#95972226v4

securities or shall be entitled to exemption from registration under applicable securities laws. If such rights constitute securities, the parties hereto intend for the exemption from registration provided by Section 1145 of the Bankruptcy Code and by other applicable law to apply to their issuance under the Plan.

6.5.    **Transfers of Beneficial Interests.** Beneficial interests in the Liquidation Trust shall be fully transferable. The Liquidation Trust shall recognize any such transfer of Claims occurring after the Effective Date.

6.6.    **Absolute Owners.** The Liquidation Trustee may deem and treat the Liquidation Trust Beneficiary reflected as the owner of a beneficial interest on the Register as the absolute owner thereof for the purposes of receiving distributions and payments on account thereof for federal and state income tax purposes and for all other purposes whatsoever.

6.7.    **Change of Address.** A Liquidation Trust Beneficiary may, after the Effective Date, select an alternative distribution address by filing a notice with the Bankruptcy Court or by written notice under penalty of perjury (copy served on the Liquidation Trustee) identifying such alternative distribution address. Absent such notice, the Liquidation Trustee shall not recognize any such change of distribution address. Such notification shall be effective only upon receipt by the Liquidation Trustee.

6.8.    **Effect of Death, Dissolution, Incapacity or Bankruptcy of Liquidation Trust Beneficiary**. The death, dissolution, incapacity or bankruptcy of a Liquidation Trust Beneficiary during the term of the Liquidation Trust shall not operate to terminate Liquidation Trust during the term of the Liquidation Trust nor shall it entitle the representative or creditors of the deceased, incapacitated or bankrupt Liquidation Trust Beneficiary to an accounting or to take any action in any court or elsewhere for the distribution of the Liquidation Trust Assets or for a partition thereof nor shall it otherwise affect the rights and obligations of the Liquidation Trust Beneficiary under this Agreement or in the Liquidation Trust.

6.9.    **Standing.** Except as expressly provided in this Agreement, the Plan or the Confirmation Order, a Liquidation Trust Beneficiary does not have standing to direct the Liquidation Trustee to do or not to do any act or to institute any action or proceeding at law or in equity against any party (other than against the Liquidation Trustee to the extent provided in this Agreement) upon or with respect to the Liquidation Trust Assets.

## ARTICLE VII
## PROCEDURES FOR RESOLVING AND TREATING DISPUTED CLAIMS

7.1.    **Incorporation of Plan Provisions.** As of the Effective Date, the Liquidation Trust shall assume responsibility for all Claims matters established by the Plan. In accordance with Article [VII.D] of the Plan, the Liquidation Trust shall establish Disputed Claims Reserves pending resolution, as set forth in the Plan, of all contested matters and adversary proceedings concerning Disputed Claims.

7.2.    **Disputed Claims Reserve**.

(a) **Establishment of Disputed Claims Reserve.** On the initial distribution date (or on any other date on which distributions are made by the Liquidation Trustee), and in connection with making all distributions required to be made on any such date under the Plan, the Liquidation Trustee shall establish a separate Disputed Claims Reserve on account of distributions of Cash as necessary pursuant to the Plan.

(b) **Amounts to Be Reserved.** The Liquidation Trustee shall reserve the ratable proportion of all Cash, or other property allocated for distribution on account of each Disputed Claim based upon the asserted amount of each such Disputed Claim, or such lesser amount as may be estimated by the Bankruptcy Court in accordance with the Plan. All Cash or other property allocable to Disputed Claims hereunder shall be distributed by the Liquidation Trustee to the relevant Disputed Claims Reserve on the initial distribution date (or such other date on which distributions are made pursuant to the Plan and this Agreement).

(c) **Distribution.** Payments on any Disputed Claim that becomes an Allowed Claim shall be distributed by the Liquidation Trustee from the Disputed Claims Reserve. If a distribution to such Holder of such Allowed Claim's applicable class has already occurred, then the Liquidation Trustee shall make any necessary catch-up payments to the Holder of such Allowed Claim within a reasonable amount of time after such Disputed Claim becomes an Allowed Claim. Distributions to each holder of a Disputed Claim that has become an Allowed Claim (and to the extent that the Holder of the Disputed Claim has not received prior distributions on account of that Claim) shall be made in accordance with the provisions of the Plan.

(d) **Termination of Disputed Reserves.** Each Disputed Reserve shall be closed and extinguished by the Liquidation Trustee when all distributions and other dispositions of Cash or other property required to be made therefrom under the Plan and this Agreement have been made. Upon closure of a Disputed Reserve, all Cash and other property held in that Disputed Reserve shall revest in the Liquidation Trust as a part of the general Liquidation Trust Assets and such Cash and property shall be used to pay the fees and expenses of the Liquidation Trust in accordance with this Agreement, and thereafter distributed on a pro rata basis to holders of Allowed Claims entitled to distributions from the Liquidation Trust.

(e) **Transmittal of Distributions and Notices.** Any property or notice which a person is or becomes entitled to receive pursuant to the Plan and this Agreement may be delivered by electronic or regular mail, postage prepaid, in an envelope addressed to that person's address listed in the Register. Property distributed in accordance with this subsection shall be deemed delivered to such person regardless of whether such property is actually received by that person. Notice given in accordance with this subsection shall be effective only upon receipt.

## ARTICLE VIII
## DISTRIBUTIONS

**8.1.** **Distributions to Liquidation Trust Beneficiaries from Liquidation Trust Assets**. All payments to be made by the Liquidation Trust to any Liquidation Trust Beneficiary

shall be made only in accordance with the Plan, the Confirmation Order and this Agreement and from the Liquidation Trust Assets (or from the income and proceeds realized from the Liquidation Trust Assets) net of the Liquidation Trust Reserve (defined below), Disputed Reserves, and other reserves established by the Liquidation Trustee, if any, and only to the extent that the Liquidation Trust has sufficient Liquidation Trust Assets (or income and proceeds realized from the Liquidation Trust Assets) to make such payments in accordance with and to the extent provided for in the Plan, the Confirmation Order, and this Agreement.

8.2.    **Distributions; Withholding.** The Liquidation Trustee shall make the initial distribution to holders of Allowed Claims entitled to distributions from the Liquidation Trust as provided in the Plan and, following the initial distribution the Liquidation Trustee shall make prompt distributions to holders of Allowed Claims (including distributions of all net Cash (including net Cash proceeds)) on such dates as it chooses in its reasonable discretion; provided, however, that all such distributions shall be made in an expeditious and orderly manner and distributions of net income plus all net proceeds from the sale of assets from the Liquidation Trust shall occur at least annually to the extent funds are available therefrom; provided, further, that the Liquidation Trust may retain an amount of net proceeds or net income (the "Liquidation Trust Reserve") in such amount (a) as is reasonably necessary to meet contingent liabilities and to maintain the value of the Liquidation Trust Assets during the term of the Liquidation Trust; (b) to pay reasonable administrative expenses including, without limitation, the compensation and the reimbursement of reasonable, actual and necessary costs, fees, and expenses (including attorneys' fees and expenses, financial advisor fees and expenses, and disbursing agent fees and expenses) of the Liquidation Trustee, in connection with the performance of their duties in connection with this Agreement; and (c) to satisfy all other liabilities and claims of creditors of the Liquidation Trust incurred or assumed in respect of the Liquidation Trust  (or to which the Liquidation Trust Assets are otherwise subject) in accordance with the Plan, the Confirmation Order and this Agreement. All such distributions shall be made as provided, and subject to any withholding or reserve, in this Agreement, the Plan or the Confirmation Order. Additionally, the Liquidation Trustee may withhold from amounts distributable to any Liquidation Trust Beneficiary any and all amounts, determined in the Liquidation Trustee's reasonable discretion, to be required by any law, regulation, rule, ruling, directive, or other governmental requirement. In addition, all distributions under this Agreement shall be net of the actual and reasonable costs of making such distributions.

8.3.    **No Distribution Pending Allowance.** No payment or distribution shall be made with respect to any Claim to the extent it is a Disputed Claim unless and until such Disputed Claim becomes an Allowed Claim, except for distributions into a Disputed Claims Reserve in accordance with the Plan, Confirmation Order, and this Agreement.

8.4.    **Distributions after Allowance.** Distributions to each holder of a Disputed Claim, to the extent that such Claim ultimately becomes an Allowed Claim, shall be made in accordance with the provisions of the Plan, Confirmation Order, and this Agreement.

8.5.    **Non-Cash Property.** Subject to Section 11.4 of this Agreement, any non-Cash property of the Liquidation Trust may be sold, transferred or abandoned by the Liquidation Trustee. Notice of such sale, transfer, or abandonment shall be provided to the holders, if any, of Secured Claims holding liens on such non-Cash property. If, in the Liquidation Trustee's reasonable judgment, such property cannot be sold in a commercially reasonable manner, or the

#95972226v4

Liquidation Trustee believes, in good faith, such property has no value to the Liquidation Trust, the Liquidation Trustee shall have the right, subject to the approval of the Oversight Committee, to abandon or otherwise dispose of such property, including by donation of such property to a charity designated by the Liquidation Trustee. Except in the case of fraud, willful misconduct, or gross negligence, no party in interest shall have a cause of action against the Liquidation Trustee or any director, officer, employee, consultant, or professional of the Liquidation Trustee, the Oversight Committee, or of any of its Members or professionals, arising from or related to the disposition of non-Cash property in accordance with this Section.

     **8.6.** **Location for Distributions; Notice of Change of Address**. Distributions to the Liquidation Trust Beneficiaries shall be made by the Liquidation Trustee to the Liquidation Trust Beneficiaries (a) at the addresses set forth on the respective proofs of Claim filed by such Liquidation Trust Beneficiaries; (b) at the addresses set forth on any written notices of address changes delivered to the Claims Agent after the date of any related proof of Claim; or (c) at the address reflected in the Schedules or, if not reflected in the Schedules, then in the other records of the Debtors if no proof of Claim is filed and the Liquidation Trustee or the Debtors have not received a written notice of a change of address. The Liquidation Trustee shall have the absolute and unconditional right to rely on the information provided by the Debtors for purposes of notices and distributions under this Agreement.

     **8.7.** **Undeliverable Distributions.** If any distribution is returned as undeliverable, the Liquidation Trust  may, in its discretion, make such efforts to determine the current address of the holder of the Claim with respect to which the distribution was made as the Liquidation Trust deems appropriate, but no distribution to any holder shall be made unless and until the Liquidation Trust  has determined the then-current address of the holder, at which time the distribution to such holder shall be made to the holder without interest. Amounts in respect of any undeliverable distributions made by the Liquidation Trust shall be returned to, and held in trust by, the Liquidation Trust  until the distributions are claimed or are deemed to be unclaimed property under section 347(b) of the Bankruptcy Code ("Unclaimed Property").

     **8.8.** **Unclaimed Property.** Except with respect to property not distributed because it is being held in a Disputed Claims Reserve, distributions that are not claimed by the earlier to occur of (i) 30 days after the final distribution; or (ii) 90 days after the distribution is returned as undeliverable or the date of issuance of check (in the case of an unclaimed distribution) (the "Unclaimed Property Date"), shall be deemed to be Unclaimed Property and shall vest or revest in the Liquidation Trust, and the Claims with respect to which those distributions are made shall be automatically canceled. After the expiration of Unclaimed Property Date, the claim of any Person or Entity to those distributions shall be discharged and forever barred. Nothing contained in the Plan or this Agreement shall require the Liquidation Trust to attempt to locate any holder of an Allowed Claim entitled to distributions from the Liquidation Trust. All funds or other property that vests or revests in the Liquidation Trust and pursuant to this Section 8.8 shall be distributed by the Liquidation Trustee to the other holders of Allowed Claims in accordance with the provisions of the Plan and this Agreement. A Claim, and the Unclaimed Property distributed on account of such Claim, shall not escheat to any federal, state, or local government or other entity by reason of the failure of its holder to claim a distribution in respect of such Claim.

**8.9.    Manner of Payment**. Unless otherwise expressly agreed, in writing, all Cash payments to be made pursuant to the Plan shall be made by check drawn on a domestic bank or an electronic wire or ACH transfer.

**8.10.    Time Bar to Cash Payments by Check.** Checks issued by the Liquidation Trust on account of Allowed Claims shall be null and void if not negotiated within 180 days after the date of issuance thereof. Requests for the reissuance of any check that becomes null and void and pursuant to this Section shall be made directly to the Liquidation Trustee by the holder of the Allowed Claim to whom the check was originally issued. Any Claim in respect of such voided check shall be made in writing on or before the later of the first anniversary of the Effective Date or the first anniversary of the date on which the Claim at issue became an Allowed Claim. After that date, all Claims in respect of void checks shall be discharged and forever barred and the proceeds of those checks shall revest in and become property of the Liquidation Trust as Unclaimed Property in accordance with Section 347(b) of the Bankruptcy Code and be distributed as Unclaimed Property.

**8.11.    Distributions on Non-Business Days.** Any payment or distribution due on a day other than a Business Day shall be made, without interest, on the next Business Day.

**8.12.    No Distribution in Excess of Allowed Amount of Claim.** Notwithstanding anything to the contrary herein, no Holder of an Allowed Claim shall receive in respect of such Claim any distribution in excess of the Allowed amount of such Claim.  No Holder of a Claim shall be entitled to interest accruing on or after the Petition Date.  No prepetition Claim shall be Allowed to the extent it is for postpetition interest or other similar charges, except to the extent permitted for Holders of Secured Claims under section 506(b) of the Bankruptcy Code.

**8.13.    Setoff and Recoupment.** As set forth in Article [VII.L] of the Plan, the Liquidation Trust may, but shall not be required to, setoff against, or recoup from, any Claim and the distribution to be made pursuant to the Plan in respect thereof, any claims or defenses of any nature whatsoever that any of the Debtors, the Estates or the Liquidation Trust  may have against the holder of such Claim, but neither the failure to do so nor the allowance of any Claim under the Plan shall constitute a waiver or release by the Debtors, the Estates or the Liquidation Trust  of any claim, defense, right of setoff, or recoupment that any of them may have against the holder of any Claim.

**8.14.    Compliance with Laws.** Any and all distributions of Liquidation Trust Assets shall be in compliance with applicable laws except as may be expressly provided herein or in the Plan. Without limiting the generality of the foregoing, (a) the Liquidation Trustee shall make distributions from the Trust to the Beneficiaries at least annually, to the extent it determines the Trust has sufficient cash available for distribution from all net cash income and all other cash received by the Trust; provided, however, that the Liquidation Trustee may, to the extent consistent with applicable law or guidance as to liquidating trusts (e.g., Revenue Procedure 82-58, 1982-2 C.B. 847, as amplified by Revenue Procedure 91-15, 1991-1 C.B. 484 and Revenue Procedure 94-45, 1994-2 C.B. 684), retain such amounts (i) as are reasonably necessary to meet contingent liabilities (including Disputed Claims), and to maintain the value of the Trust Assets during the term of the Trust, (ii) to pay reasonable administrative expenses including, without limitation, the compensation and the reimbursement of reasonable, actual and necessary costs, fees (including attorneys' fees) and

expenses of the Liquidation Trustee in connection with the performance of the Liquidation Trustee's duties in connection with this Agreement and any amounts owed to the Liquidation Trustee pursuant to the terms hereof, and (iii) to satisfy all other liabilities incurred or assumed by the Trust (or to which the Trust Assets are otherwise subject) in accordance with the Plan and this Agreement; and (b) the Liquidation Trustee, in its discretion, may cause the Trust to withhold and / or pay to the appropriate tax authority from amounts distributable from the Trust to Beneficiaries any and all amounts as may be sufficient to pay the amount of any tax or other charge that has been or might be assessed or imposed by any law, regulation, rule, ruling, directive, or other governmental requirement on such Beneficiary or the Trust with respect to the amount to be distributed to such Beneficiary. The Liquidation Trustee shall determine such amount to be withheld by the Trust in its reasonable discretion and shall cause the Trust to distribute to the Beneficiary any excess amount withheld. All such amounts withheld and paid to the appropriate tax authority (or reserved pending resolution of the need to withhold) shall be treated as amounts distributed to such Beneficiary for all purposes of this Agreement.

## ARTICLE IX
## TAXES

**9.1.    Treatment of Liquidation Trust Assets Transfer**. For all U.S. federal income tax purposes, all Parties (including the Debtors, the Liquidation Trustee and the Liquidation Trust Beneficiaries) shall treat the transfer of the Liquidation Trust Assets to the Liquidation Trust as (i) a transfer of the Liquidation Trust Assets (subject to any obligations related to those assets) directly to the Liquidation Trust Beneficiaries, followed by (ii) the transfer by such Liquidation Trust Beneficiaries of such Liquidation Trust Assets to the Liquidation Trust in exchange for Liquidation Trust Beneficial Interests. Accordingly, the Liquidation Trust Beneficiaries shall be treated for U.S. federal income tax purposes (and, to the extent permitted, for state and local income tax purposes) as the grantors and owners of their respective shares of the Liquidation Trust Assets.

**9.2.    Income Tax Status.** Consistent with Revenue Procedure 94-45, 1994-28 I.R.B. 124, the Liquidation Trust  shall be treated as a liquidating trust pursuant to Treasury Regulation Section 301.7701-4(d) and as a grantor trust pursuant to IRC Sections 671-677. As such, the Liquidation Trust Beneficiaries will be treated as both the grantors and the deemed owners of the Liquidation Trust. Any items of income, deduction, credit, and loss of the Liquidation Trust be allocated for federal income tax purposes to the Liquidation Trust Beneficiaries.

**9.3.    Tax Returns.** In accordance with IRC Section 6012 and Treasury Regulation Section 1.671-4(a), the Liquidation Trust shall cause to be prepared and filed with the IRS annual tax returns as a grantor trust on Form 1041. In addition, the Liquidation Trust shall cause to be prepared and filed in a timely manner such other tax returns, including any state and local tax returns, as are required by applicable law and pay any taxes shown as due thereon out of the Liquidation Trust Assets (or the income or proceeds thereof). Within a reasonable time following the end of the taxable year, the Liquidation Trust shall send to each Liquidation Trust Beneficiary a separate statement setting forth the Liquidation Trust Beneficiary's share of items of income, gain, loss, deduction or credit and will instruct each such Liquidation Trust Beneficiary to report such items on their federal income tax returns. Unless specifically required otherwise under applicable law, the Liquidation Trust shall provide each Liquidation Trust Beneficiary with a copy of the Form 1041 for the Liquidation Trust (without attaching any other Liquidation Trust

Beneficiary's Schedule K-1 or other applicable information form) along with such Liquidation Trust Beneficiary's Schedule K-1 or other applicable information form in order to satisfy the foregoing requirement. Except as required otherwise by applicable law, the Liquidation Trust's taxable income shall be allocated by reference to the manner in which an amount of Cash representing such taxable income would be distributed (were such Cash permitted to be distributed at such time) if, immediately prior to such deemed distribution, the Liquidation Trust had distributed all of its assets (valued at their book value) to the Liquidation Trust Beneficiaries, adjusted for prior taxable income and loss and taking into account all prior distributions from the Liquidation Trust. Similarly, taxable loss of the Liquidation Trust shall be allocated by reference to the manner in which economic loss would be borne immediately after a hypothetical liquidating distribution of the remaining Liquidation Trust Assets.

**9.4.     Withholding of Taxes and Reporting Related to Liquidation Trust Operations.** The Liquidation Trust shall comply with all withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all distributions made by the Liquidation Trust shall be subject to any such withholding and reporting requirements. The Liquidation Trust shall take reasonable steps, including requesting appropriate forms from the Liquidation Trust Beneficiaries, to reduce or eliminate any such withholding tax. To the extent that the operation of the Liquidation Trust or the liquidation of the Liquidation Trust Assets creates a tax liability, the Liquidation Trust shall promptly pay such tax liability out of the Liquidation Trust Assets (or the income or proceeds thereof) and any such payment shall be considered a cost and expense of the operation of the Liquidation Trust payable without Bankruptcy Court order. The Liquidation Trust may reserve a sum, the amount of which shall be determined by the Liquidation Trust, sufficient to pay the accrued or potential tax liability arising out of the operations of the Liquidation Trust or the operation of the Liquidation Trust Assets.  The Liquidation Trustee, on behalf of the Liquidation Trust, may enter into agreements with taxing authorities or other governmental units for the payment of such amounts as may be withheld. Any federal, state, or local withholding taxes or other amounts required to be withheld under applicable law shall be deducted from distributions hereunder. All Liquidation Trust Beneficiaries shall be required to provide any information necessary to effect the withholding of such taxes.

**9.5.     Valuations.**  As soon as possible after the Effective Date, the Liquidation Trustee and the Oversight Committee, shall work together to make a good faith determination of the value of all of the Liquidation Trust Assets as of the Effective Date. The Liquidation Trustee shall establish appropriate means to apprise the Oversight Committee and the Liquidation Trust Beneficiaries of such valuation and such valuation shall be used consistently by all parties (including, without limitation, the Debtors, the Liquidation Trust, the Liquidation Trust Beneficiaries, and the Oversight Committee) for all federal income tax purposes. The Bankruptcy Court shall resolve any dispute regarding the valuation of the Liquidation Trust Assets.

**9.6.     Treatment of Disputed Reserves.**

(a)     The Liquidation Trust shall be responsible for payment, out of the Liquidation Trust Assets, of any taxes imposed on the Liquidation Trust (including any "disputed ownership fund" within the meaning of Treasury Regulations Section 1.468B-9) or the Liquidation Trust Assets. In accordance therewith, any taxes imposed on any disputed ownership fund or its assets will be paid out of the assets of the disputed ownership fund and

netted against any subsequent distribution in respect of the allowance or disallowance of such Claims.

(b)      The Liquidation Trustee (i) shall timely elect to treat any Liquidation Trust Assets allocable to the Disputed Claims Reserve as a "disputed ownership fund" governed by Treasury Regulations Section 1.468B-9, and (2) to the extent permitted by applicable law, shall report consistently for state and local income tax purposes. If a "disputed ownership fund" election is made, all parties (including the Liquidation Trustee and the holders of Liquidation Trust Beneficial Interests) shall report for U.S. federal, state and local income tax purposes consistently with the foregoing. The Liquidation Trustee shall file all income tax returns with respect to any income attributable to a "disputed ownership fund" and shall pay the U.S. federal, state and local income taxes attributable to such disputed ownership fund based on the items of income, deduction, credit, or loss allocable thereto.

**9.7.   Expedited Determination of Taxes.** The Liquidation Trust may request an expedited determination of taxes of the Liquidation Trust, including the Disputed Reserves, under section 505(b) of the Bankruptcy Code for all returns filed for the Liquidation Trust for all taxable periods through the termination of the Liquidation Trust.

## ARTICLE X
## TERMINATION OF LIQUIDATION TRUST

**10.1.   Termination of Liquidation Trust**.  The Liquidation Trustee and the Oversight Committee shall be discharged and the Liquidation Trust shall be terminated, at such time as (a) all Disputed Claims have been resolved, (b) all of the Liquidation Trust Assets have been liquidated, (c) all duties and obligations of the Liquidation Trustee hereunder have been fulfilled, (d) all distributions required to be made by the Liquidation Trustee under the Plan and this Agreement have been made, and (e) all of the Chapter 11 Cases have been closed; provided, however, that in no event shall the Liquidation Trust  be terminated later than the term of the Liquidation Trust  under Section 10.2 of this Agreement, as such term may be extended pursuant to Section 10.2.

**10.2.   Maximum Term.**  In no event shall the Liquidating Trust be dissolved later than five (5) years from the Effective Date unless the Bankruptcy Court, upon motion made by a party in interest within the six (6) month period prior to such fifth (5th) anniversary (and, in the event of further extension, at least six (6) months prior to the end of any extension period), determines that a fixed period extension (not to exceed three (3) years, together with any prior extensions, without a favorable letter ruling from the IRS that any further extension would not adversely affect the status of the Liquidation Trust as a liquidating trust for U.S. federal income tax purposes) is necessary to facilitate or complete the recovery on and liquidation of the Liquidation Trust Assets.

**10.3.   Events Upon Termination.** At the conclusion of the existence of the Liquidation Trust, the Liquidation Trustee shall distribute the remaining Liquidation Trust Assets, if any, to the Liquidation Trust Beneficiaries, in accordance with the Plan, the Confirmation Order, and this Agreement.

#95972226v4

**10.4.    Winding Up, Discharge, and Release of the** Liquidation **Trustee.** For the purposes of winding up the affairs of the Liquidation Trust at its conclusion, the Liquidation Trustee shall continue to act as Liquidation Trustee until its duties under this Agreement have been fully discharged or its role as Liquidation Trustee is otherwise terminated under this Agreement and the Plan. The Liquidation Trustee shall retain the books, records, and files that shall have been delivered to or created by the Liquidation Trustee until such time that the Liquidation Trustee determines, in its sole discretion, that such books, records, and files may be destroyed (unless such records and documents are necessary to fulfill the Liquidation Trustee's obligations pursuant to this Agreement), subject to the terms of any joint prosecution and common interests agreement(s) to which the Liquidation Trustee may be a party.  The Liquidation Trustee may, in its sole discretion, file a motion with the Bankruptcy Court to enter an order relieving the Liquidation Trustee, its agents and employees of any further duties, discharging, and releasing the Liquidation Trustee.

## ARTICLE XI

**11.1.    Liquidation Trust Oversight Committee.**  Pursuant to Article V.C.2 of the Plan, the administration of the Liquidation Trust shall be overseen by three (3) trust representatives (the "Liquidation Trust Oversight Committee"), one to be selected by the Committee, one to be selected by the Ad Hoc Group, and one independent representative selected by mutual agreement of the other two representatives.  In the event that the other two representatives cannot agree upon an independent representative, the Bankruptcy Court shall have the power to appoint the independent representative.  Should any of the members of the Liquidation Trust Oversight Committee resign from or otherwise cease to serve on the Oversight Committee, replacements, if any, may be selected by the group that was vested with the initial right to select such reigning member as set forth in this Section 11.1. Except as otherwise expressly provided in the Plan and this Agreement, the Liquidation Trust Oversight Committee shall have the responsibility to advise the Liquidation Trustee as provided hereunder. Action by the Liquidation Trust Oversight Committee shall be taken by majority vote of the members.

**11.2.    Reports to Liquidation Trust Oversight Committee.**  Notwithstanding any other provision of this Agreement, the Liquidation Trustee shall report to the Liquidation Trust Oversight Committee on a regular basis, not fewer than two (2) times per year (or more frequently if requested by the Liquidation Trust Oversight Committee), which reports shall include such matters and information as may be reasonably requested by the Liquidation Trust Oversight Committee. The Liquidation Trust Oversight Committee shall keep all such information strictly confidential, except to the extent that the Liquidation Trust Oversight Committee deems it reasonably necessary to disclose such information.

**11.3.    Advice and Consultation Role of the Liquidation Trust Oversight Committee.** Except as otherwise set forth below with respect to the consent rights of the Liquidation Trust Oversight Committee, the Liquidation Trustee shall not need to obtain the approval of the Liquidation Trust Oversight Committee prior to taking any action in accordance with the Plan and this Agreement. The Liquidation Trustee shall use reasonable efforts to consult with the Liquidation Trust Oversight Committee on matters that, in the Liquidation Trustee's discretion, would have a material impact on a Beneficial Trust Interest, which consultation may be via e-mail or any other method of communication.

25

**11.4.   Liquidation Trust Oversight Committee Consent Rights.**  Notwithstanding any other provision of this Agreement, the actions of the Liquidation Trustee shall be subject to the prior consent of the Liquidation Trust Oversight Committee only with respect to the following matters, or as otherwise expressly set forth in the Plan, the Confirmation Order, or this Agreement:

(i)      the commencement, settlement, compromise, or other resolution of any Causes of Action in which more than $1,000,000 of damages is being sought or being paid;

(ii)     the sale, transfer, assignment or other disposition of any Liquidation Trust Assets (including the income and proceeds therefrom) having a valuation (for any individual transaction or series of related transactions) equal to or in excess of $1,000,000;

(iii)    the abandonment of any Causes of Action or other Liquidation Trust Assets (including the income and proceeds therefrom) that have a valuation (for any individual transaction or series of related transactions) equal to or in excess of $1,000,000, as determined by the Liquidation Trustee in consultation with the Liquidation Trust Oversight Committee; and

(iv)    any amendment to the Liquidation Trust Agreement affecting the rights and powers of the Liquidation Trust Oversight Committee.

## ARTICLE XII
## MISCELLANEOUS PROVISIONS

**12.1.   Amendments**. The Liquidation Trustee may amend, supplement, or waive any provision of this Agreement, without notice to or the consent of any Liquidation Trust Beneficiary or the approval of the Bankruptcy Court, but only to: (i) cure any ambiguity, omission, defect, or inconsistency in this Agreement; provided that such amendments, supplements or waivers shall not adversely affect the Distributions to any of the Liquidation Trust Beneficiaries or adversely affect the U.S. federal income tax status of the Trust as a liquidating trust; or (ii) comply with any requirements in connection with the U.S. federal income tax status of the Trust as a liquidating trust. Any substantive provision of this Agreement may be amended or waived by the Liquidation Trustee, subject to the approval of the Bankruptcy Court; provided, however, that no change may be made to this Agreement that would (i) adversely affect the U.S. federal income tax status of the Trust as a liquidating trust or (ii) expand, add to, or modify the original stated purpose of the Trust. Notwithstanding this section, any amendments to this Agreement shall not be inconsistent with the purpose and intention of the Trust to liquidate in an expeditious but orderly manner the Liquidation Trust Assets in accordance with Treasury Regulation Section 301.7701-4(d). Notwithstanding any other provision herein, the Liquidation Trustee may apply to the Bankruptcy Court to order or allow any amendment of this Agreement and the Bankruptcy Court shall have jurisdiction and authority to approve amendments of this Agreement.

**12.2.   Waiver.** No failure by the Liquidation Trust or the Liquidation Trustee or the Oversight Committee to exercise or delay in exercising any right, power, or privilege hereunder shall operate as a waiver, nor shall any single or partial exercise of any right, power, or privilege hereunder preclude any further exercise thereof, or of any other right, power, or privilege.

#95972226v4

**12.3.   Cumulative Rights and Remedies.** The rights and remedies provided in this Agreement are cumulative and are not exclusive of any rights under law or in equity.

**12.4.   No Bond Required.** Notwithstanding any state law to the contrary, the Liquidation Trustee (including any successor Liquidation Trustee) shall be exempt from giving any bond or other security in any jurisdiction.

**12.5.   Irrevocability.** This Agreement and the Liquidation Trust created hereunder shall be irrevocable, except as otherwise expressly provided in this Agreement.

**12.6.   Tax Identification Numbers.** The Liquidation Trustee may require any Liquidation Trust Beneficiary to furnish to the Liquidation Trustee its social security number or employer or taxpayer identification number as assigned by the IRS or an applicable Form W-8.

**12.7.   Relationship to the Plan.** The principal purpose of this Agreement is to aid in the implementation of the Plan and, therefore, this Agreement incorporates and is subject to the provisions of the Plan and the Confirmation Order. In the event that any provision of this Agreement is found to be inconsistent with a provision of the Plan or the Confirmation Order, the provisions of the Plan or the Confirmation Order, as applicable, shall control.

**12.8.   Division of Liquidation Trust.** Under no circumstances shall the Liquidation Trustee have the right or power to divide the Liquidation Trust unless authorized to do so by the Bankruptcy Court.

**12.9.   Applicable Law.** This Liquidation Trust shall be governed by and construed in accordance with the laws of the State of Texas, without giving effect to rules governing the conflict of laws.

**12.10.   Retention of Jurisdiction.** Notwithstanding the Effective Date, and to the fullest extent permitted by law, the Bankruptcy Court shall retain exclusive jurisdiction over the Liquidation Trust after the Effective Date, including, without limitation, jurisdiction to resolve any and all controversies, suits and issues that may arise in connection therewith, including, without limitation, this Liquidation Trust Agreement, or any entity's obligations incurred in connection herewith, including without limitation, any action against the Liquidation Trustee or any member of the Oversight Committee, or any professional retained by the Liquidation Trustee or the Oversight Committee, in each case in its capacity as such. Each party to this Liquidation Trust Agreement hereby irrevocably consents to the exclusive jurisdiction of the Bankruptcy Court in any action to enforce, interpret or construe any provision of this Liquidation Trust Agreement or of any other agreement or document delivered in connection with this Liquidation Trust Agreement, and also hereby irrevocably waives any defense of improper venue, forum non conveniens or lack of personal jurisdiction to any such action brought in the Bankruptcy Court. Each party further irrevocably agrees that any action to enforce, interpret, or construe any provision of this Liquidation Trust Agreement will be brought only in the Bankruptcy Court. Each party hereby irrevocably consents to the service by certified or registered mail, return receipt requested, of any process in any action to enforce, interpret or construe any provision of this Liquidation Trust Agreement.

#95972226v4

**12.11.  Severability**. In the event that any provision of this Agreement or the application thereof to any person or circumstance shall be determined by the Bankruptcy Court to be invalid or unenforceable to any extent, the remainder of this Agreement, or the application of such provision to persons or circumstance, other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and such provision of this Agreement shall be valid and enforced to the fullest extent permitted by law.

**12.12.  Limitation of Benefits.** Except as otherwise specifically provided in this Agreement, the Plan or the Confirmation Order, nothing herein is intended or shall be construed to confer upon or to give any person other than the parties hereto and the Liquidation Trust Beneficiaries any rights or remedies under or by reason of this Agreement.

**12.13.  Notices.** All notices, requests, demands, consents, and other communications hereunder shall be in writing (with email being sufficient) and shall be deemed to have been duly given to a person, if delivered in person or by facsimile with an electromagnetic report of delivery or if sent by overnight mail, registered mail, certified mail, or regular mail, with postage prepaid, to the following addresses:

> If to the Liquidation Trustee:
> [_____]
>
> If to a Liquidation Trust Beneficiary:
>
> To the name and distribution address set forth in the Register with respect to such Liquidation Trust Beneficiary.

The parties may designate in writing from time to time other and additional places to which notices may be sent.

**12.14.  Further Assurances.** From and after the Effective Date, the parties hereto covenant and agree to execute and deliver all such documents and notices and to take all such further actions as may reasonably be required from time to time to carry out the intent and purposes of this Agreement, and to consummate the transactions contemplated hereby.

**12.15.  Integration.** This Agreement, the Plan, and the Confirmation Order constitute the entire agreement with, by and among the parties thereto, and there are no representations, warranties, covenants, or obligations except as set forth herein, in the Plan and in the Confirmation Order. This Agreement, together with the Plan and the Confirmation Order, supersede all prior and contemporaneous agreements, understandings, negotiations, and discussions, written or oral, of the parties hereto, relating to any transaction contemplated hereunder.

**12.16.  Interpretation.** The enumeration and Section headings contained in this Agreement are solely for convenience of reference and shall not affect the meaning or interpretation of this Agreement or of any other provision hereof. Unless context otherwise requires, whenever used in this Agreement the singular shall include the plural and the plural shall include the singular, and words importing the masculine gender shall include the feminine and the neuter, if appropriate, and vice versa, and words importing persons shall include partnerships, associations, and corporations. The words herein, hereby, and hereunder and words with similar

#95972226v4

import, refer to this Agreement as a whole and not to any particular Section or subsection hereof unless the context requires otherwise. Any reference to the "Liquidation Trustee" shall be deemed to include a reference to the "Liquidation Trust " and any reference to the "Liquidation Trust " shall be deemed to include a reference to the "Liquidation Trustee" except for the references in Sections [__] and [__], and such other provisions in which the context otherwise requires.

**12.17.**  Counterparts. This Agreement may be signed by the parties hereto in counterparts, which, when taken together, shall constitute one and the same document. Delivery of an executed counterpart of this Agreement by facsimile or email in pdf format shall be equally effective as delivery of a manually executed counterpart

IN WITNESS WHEREOF, the parties hereto have either executed and acknowledged this Agreement, or caused it to be executed and acknowledged on their behalf by their duly authorized officers or representatives, all as of the date first above written.

**DEBTORS:**

Basic Energy Services, Inc., Basic Energy Services, L.P., C&J Well Services, Inc., KVS Transportation, Inc., Indigo Injection #3, LLC, Basic Energy Services GP, LLC, Basic Energy Services LP, LLC, Taylor Industries, LLC, SCH Disposal, L.L.C., Agua Libre Holdco LLC, Agua Libre Asset Co LLC, Agua Libre Midstream LLC, and Basic ESA, Inc.

By: _____
Name: David M. Dunn
Title:  Wind-Down Director

**LIQUIDATION TRUSTEE:**

_____
DAVID M. DUNN, solely in his capacity as Liquidation Trustee

#95972226v4

**EXHIBIT B**

**PROMISSORY NOTE**

**BASIC INFORMATION**

Date:  [__]

Borrower:  The Liquidation Trust, as defined under that certain Combined Disclosure Statement and Joint Plan of Liquidation of Basic Energy Services, Inc. and its Affiliated Debtors Pursuant to Chapter 11 of the Bankruptcy Code filed in the case styled as *In re:  Basic Energy Services, Inc., et al.*, Case No. 21-90002, in the United States Bankruptcy Court for the Southern District of Texas Houston Division on June 28, 2022 [Docket No. 1269] (the "Plan"). Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Plan or that certain Liquidation Trust Agreement, dated as of [●], 2022, as applicable (the "Liquidation Trust Agreement").

Borrower's Mailing Address: [David Dunn, Liquidation Trustee, ADDRESS]

Lenders:  Holders of Class 8 General Unsecured Claims, which shall fund their portion of the principal amount hereunder with the Liquidation Trust Loan General Unsecured Creditor Funding Amount, and Holders of Class 4 Non-Ascribe Secured Notes Claims, which shall fund their portion of the principal amount hereunder with the Liquidation Trust Loan Non-Ascribe 2018 Notes Funding Amount.

Place for Payment: The Repayment Amount shall be distributed to the Lenders as more fully set forth below under the section titled "Promise to Pay".

Principal Amount:  $1,000,000

Annual Interest Rate:  0%

Terms of Payment (principal and interest): The Principal Amount plus additional sums required to achieve the Liquidation Trust Minimum Return for the Lenders (the "Repayment Amount") is due and payable upon any disbursement of cash from the Liquidation Trust as set forth in the Liquidation Trust Agreement until the Repayment Amount is paid to the Lenders in cash in full (the "Termination Date").

Security for Payment: This note is unsecured.

**Promise to Pay**

Borrower promises to pay to the order of Lenders the Repayment Amount. This note is payable at the Place for Payment and according to the Terms of Payment. The allocable portion of the Repayment Amount in respect of the Liquidation Trust Loan General Unsecured Creditor Funding Amount shall be paid to the GSO General Unsecured Creditor Reserve by the Liquidation

1

Trustee in its capacity as Disbursing Agent. The allocable portion of the Repayment Amount in respect of the Liquidation Trust Loan Non-Ascribe 2018 Notes Funding Amount shall be paid by the Liquidation Trustee to the Prepetition Secured Notes Trustee, who shall act as Disbursing Agent in respect of the Non-Ascribe Secured Notes.

### Limitations on Additional Debt Incurrence

As set forth in the Plan and pursuant to this note, the Liquidation Trust shall not incur any debt for borrowed money other than this note and debt acceptable, in their sole discretion, to the Ad Hoc Group and the Liquidation Trust representative appointed by the Committee.

### Defaults and Remedies

A default exists under this note if (1) Borrower defaults in the payment of this note or in the performance of any obligation in any instrument securing or collateral to this note; (2) (a) Borrower or (b) any other person liable on any part of this note (an "Other Obligated Party") fails to timely pay or perform any obligation or covenant in any written agreement between Lenders and Borrower or any Other Obligated Party other than as described in (1) above; (3) any representation in this note or in any other written agreement between Lenders and Borrower or any Other Obligated Party is materially false when made; (4) a receiver is appointed for Borrower or an Other Obligated Party or any property on which a lien or security interest (if any) is created as security (the "Collateral Security") for any part of this note; (5) any Collateral Security is assigned for the benefit of creditors; (6) a bankruptcy or insolvency proceeding is commenced by Borrower, the Liquidation Trustee, a partnership of which Borrower is a general partner, or an Other Obligated Party; (7) (a) a bankruptcy or insolvency proceeding is commenced against Borrower, the Liquidation Trustee, a partnership of which Borrower is a general partner, or an Other Obligated Party and (b) the proceeding continues without dismissal for sixty days, the party against whom the proceeding is commenced admits the material allegations of the petition against it, or

2

an order for relief is entered; (8) Borrower, the Liquidation Trustee, a partnership of which Borrower is a general partner, or an Other Obligated Party is terminated, begins to wind up its affairs, or is authorized to terminate or wind up its affairs by its governing body or persons, or any event occurs or condition exists that permits the termination or winding up of the affairs of Borrower, the Liquidation Trustee, a partnership of which Borrower is a general partner, or an Other Obligated Party; or (9) any Collateral Security (if any) is impaired by loss, theft, damage, levy and execution, issuance of an official writ or order of seizure, or destruction, unless it is promptly replaced with collateral security of like kind and quality or restored to its former condition.

Upon the occurrence of a default under this note, the Oversight Committee may, on behalf of the Lenders, declare the unpaid principal balance, and any other amounts owed on the note immediately due, and may exercise all other rights and remedies available at law or in equity on behalf of the Lenders.

## Notice

All notices, requests, demands, consents, and other communications hereunder shall be in writing (with email being sufficient) and shall be deemed to have been duly given to a person, if delivered in person or by facsimile with an electromagnetic report of delivery or if sent by overnight mail, registered mail, certified mail, or regular mail, with postage prepaid, to the following addresses:

If to the Borrower:

[_____]

If to the Oversight Committee on behalf of the Lenders:

[_____]

3

The parties may designate in writing from time to time other and additional places to which notices may be sent.

### Waivers

Notwithstanding any other provision of this note, in the event of a default, before exercising any of the Lenders' remedies under this note, the Oversight Committee will, on behalf of the Lenders, first give Borrower written notice of default and Borrower will have ten days after notice is given in which to cure the default. If the default is not cured ten days after notice, (1) Borrower and each surety, endorser, and guarantor waive all demand for payment, presentation for payment, protest, and notice of protest, to the extent permitted by law; and (2) the Oversight Committee may declare the unpaid principal balance, and any other amounts owed on the note immediately due and may exercise all other rights and remedies available at law or in equity.

### Attorney's Fees

Borrower also promises to pay reasonable attorney's fees and court and other costs if an attorney is retained to collect or enforce the note. Borrower will pay Lenders these expenses on demand at the Place for Payment. These expenses will become part of the debt evidenced by the note and will be secured by any security for payment.

### Prepayment

Borrower may prepay this note in any amount at any time before the Termination Date without penalty or premium.

### Transfers; Successors and Assigns

The terms and conditions of this note shall inure to the benefit of and be binding upon the respective successors and permitted assigns of the parties; provided that none of the rights, interests

4

or obligations hereunder may be assigned, by operation of law or otherwise, in whole or in part, by the Borrower without the prior written consent of the Oversight Committee.

## Choice of Law; Venue

This note shall be governed and construed in accordance with the internal laws of the State of [●], without regard to its choice of law principles. All actions or proceedings arising in connection with this note shall be exclusively brought in the in the [●] Court or, if such court shall not have jurisdiction, any federal court located in the State of [●] or other [●] state court.[1] **EACH PARTY HERETO IRREVOCABLY WAIVES ANY RIGHT IT MAY HAVE TO ASSERT THE DOCTRINE OF FORUM NON CONVENIENS, TO ASSERT THAT IT IS NOT SUBJECT TO THE JURISDICTION OF SUCH COURTS OR TO OBJECT TO VENUE TO THE EXTENT ANY PROCEEDING IS BROUGHT IN ACCORDANCE WITH THIS SECTION.**

## Waiver of Jury Trial

**EACH OF THE PARTIES HERETO IRREVOCABLY WAIVES ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY LEGAL PROCEEDING ARISING OUT OF OR RELATING TO THIS NOTE OR THE TRANSACTIONS CONTEMPLATED HEREBY.**

## Severability

Unless otherwise expressly provided herein, the rights of the Lenders are several rights, not rights jointly held with any of the other Lenders. If any provision of this note shall be judicially determined to be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall not in any way be affected or impaired thereby.

---

[1] **NTD:** governing law to be confirmed; venue to be confirmed.

**Other Clauses**

Each Borrower is responsible for all obligations represented by this note.

When the context requires, singular nouns and pronouns include the plural.

_____

DAVID DUNN, as LIQUIDATION TRUSTEE

**EXHIBIT C**

**Retained Causes of Action**

In accordance with and as provided by section 1123(b) of the Bankruptcy Code and Article V.G of the *Combined Disclosure Statement and Joint Plan of Liquidation of Basic Energy Services and Its Affiliated Debtors Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 1269] (as may be amended, modified, and/or supplemented, the "Plan") the Wind-Down Debtors shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action (including all Avoidance Actions), whether arising before or after the Petition Date, including any actions specifically enumerated herein, and such rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date, subject to the limitations set forth herein. No Entity may rely on the absence of a specific reference in the Plan, herein, or the Disclosure Statement to any Cause of Action against it as any indication that the Wind-Down Debtors will not pursue any and all available Causes of Action against it.

The Wind-Down Debtors expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan. Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled under the Plan or pursuant to a Bankruptcy Court order (including, specifically, **the GSO and/or the Ascribe 9019 Order**), the Wind-Down Debtors expressly reserve all Causes of Action for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation.  In accordance with section 1123(b)(3) of the Bankruptcy Code, except as otherwise provided in the Plan or herein, any Causes of Action that a Debtor may hold against any Entity shall vest or re-vest in the Wind-Down Debtors and subsequently, to the Liquidation Trust.

The applicable Wind-Down Debtor, through its authorized agents, representatives, or successors in interest, including the Liquidation Trust, shall retain and may exclusively enforce any and all such Causes of Action. The Wind-Down Debtors or the Liquidation Trustee, as applicable, shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action, and to decline to do any of the foregoing without the consent or approval of any third party or further notice to, or action, order, or approval of, the Bankruptcy Court.

Notwithstanding and without limiting the generality of Article V.G of the Plan, the Wind-Down Debtors, expressly reserve all Causes of Action, including the following types of claims and causes of action, as described in more detail below: (I) claims related to insurance policies; (II) claims related to tax obligations and refunds; (III) claims, defenses, cross-claims, and counterclaims related to litigation and possible litigation; (IV) claims related to contracts and leases; (V) claims related to accounts receivable and accounts payable; (VI) claims related to deposits/prepayments, adequate assurance postings, and other collateral postings; (VII) claims related to liens; (VIII) Avoidance Actions; (IX) Ascribe Related Claims (as defined below); (X) other Causes of Action.

**I.      Claims Related to Insurance Policies**

Unless otherwise released by the Plan, the Wind-Down Debtors expressly reserve all Causes of Action based in whole or in part upon any and all insurance contracts and insurance policies to which any Debtor or Wind-Down Debtor is a party or pursuant to which any Debtor or Wind-Down Debtor has any rights whatsoever, regardless of whether such contract or policy is specifically identified in the Plan, this Plan Supplement, or any amendments thereto, including, without limitation, Causes of Action against insurance carriers, reinsurance carriers, insurance brokers, underwriters, occurrence carriers, or surety bond issuers relating to coverage, indemnity, contribution, reimbursement, or any other matters.

## II.     Claims Related to Tax Obligations and Refunds

Unless otherwise released by the Plan, the Wind-Down Debtors expressly reserve all Causes of Action based in whole or in part upon any and all tax obligations to which any Debtor or Wind-Down Debtor is a party or pursuant to which any Debtor or Wind-Down Debtor has any rights whatsoever, including, without limitation, against or related to all Entities that owe or that may in the future owe money related to tax refunds to the Debtors or the Wind-Down Debtors, regardless of whether such Entity is specifically identified herein.

## III.    Claims, Defenses, Cross-claims, and Counterclaims Related to Litigation and Possible Litigation

Unless otherwise released by the Plan, the Wind-Down Debtors expressly reserve all Causes of Action against or related to all Entities that are party to or that may in the future become party to litigation, arbitration, or any other type of adversarial proceeding or dispute resolution proceeding, including an adversary proceeding before the Bankruptcy Court, whether formal or informal or judicial or non-judicial, regardless of whether such Entity is specifically identified in the Plan, this Plan Supplement, or any amendments thereto.

## IV.     Claims Related to Contracts and Leases

Unless otherwise released by the Plan, the Wind-Down Debtors expressly reserve all Causes of Action based in whole or in part upon any and all contracts and leases to which any of the Debtors or Wind-Down Debtors is a party or pursuant to which any of the Debtors or Wind-Down Debtors has any rights whatsoever (regardless of whether such contract or lease is specifically identified in the Plan, the Plan Supplement, herein, or any amendments thereto).

## V.      Claims Related to Accounts Receivable and Accounts Payable

Unless otherwise released by the Plan, the Wind-Down Debtors expressly reserve all Causes of Action against or related to all Entities that owe or that may in the future owe money to the Debtors or the Wind-Down Debtors, regardless of whether such Entity is expressly identified in the Plan, herein, or any amendments thereto. Furthermore, the Wind-Down Debtors expressly reserve all Causes of Action against or related to all Entities that assert or may assert that the Debtors or the Wind-Down Debtors, as applicable, owe money to them.

## VI.     Claims Related to Deposits/Prepayments, Adequate Assurance Postings, and Other Collateral Postings

2

Unless otherwise released by the Plan the GSO or the Ascribe 9019 Order, the Wind-Down Debtors expressly reserve all Causes of Action based in whole or in part upon any and all postings of a security deposit, adequate assurance payment, or any other type of deposit, prepayment, or collateral, regardless of whether such posting of security deposit, adequate assurance payment, or any other type of deposit, prepayment or collateral is specifically identified herein.

## VII.  Claims Related to Liens

Unless otherwise released by the Plan, GSO or the Ascribe 9019 Order, the Wind-Down Debtors expressly reserve all Causes of Action based in whole or in part upon any and all liens, regardless of whether such lien is specifically identified herein. The Wind-Down Debtors expressly reserve all Causes of Action including against advisors, agents, attorneys, representatives, professionals, consultants, financial advisors, other professional advisors and/or third parties related to the prepetition conduct or advice concerning any liens, including, without limitation, the scope, priority, validity, and documentation of such liens and the original preparation and recordation of any deeds of trust related to such liens.

## VII.  Avoidance Actions

Unless otherwise released by the Plan, the Wind-Down Debtors expressly reserve all avoidance, recovery, subordination, or other claims, actions, or remedies that may be brought by or on behalf of the Debtors or their Estates or other authorized parties in interest under chapter 5 of the Bankruptcy Code or related applicable non-bankruptcy law, including actions or remedies under sections 502, 510, 542, 544, 545, and 547 through and including 553 and 724(a) of the Bankruptcy Code or under similar or related state or federal statutes and common law, including fraudulent transfer laws of the states of Delaware, Texas, New York and any other state.

## IX.  Ascribe Related Litigation

Unless otherwise released by the Plan or the Ascribe 9019 Order, the Wind-Down Debtors expressly reserve all Causes of Action against the Ascribe-Related Directors (as that term is defined in the Plan), including, without limitation, claims related to breach of fiduciary duty, corporate waste, or fraudulent transfer.

## X.  Other Causes of Action

Unless otherwise released by the Plan, the Wind-Down Debtors expressly reserve all Causes of Action against:

- all Entities that have filed, or may file, a proof of claim or request for payment of administrative expenses in these chapter 11 cases;
- all agents and independent contractors of any Debtor, creditors, service providers, utilities, suppliers, vendors, insurers, sureties, factors, lessors, or other parties that provided financial accommodations, goods or services of any kind to any Debtor at any time;
- any person that owed any legal duty, no matter how arising, to any Debtor;
- any person that caused environmental liabilities related to any real or personal property of the Debtors or the Wind-Down Debtors;

<div align="center">3</div>

- any Person against whom a Cause of Action is discovered after the confirmation of the Plan; and
- any Entity identified in the Debtors' respective Statements of Financial Affairs [Docket Nos. 312, 314, 315, 316, 317, 318, 319, 320, 322, 323, 324 and 325] and Schedules [Docket Nos. 291, 292, 293, 294, 295, 296, 297, 299, 300, 301, 302, 303 and 304], which are incorporated herein by reference. In addition, unless otherwise released or exculpated by the Plan, the Wind-Down Debtors expressly reserve the following other claims: (i) derivative claims of the Debtors pursuant to state or non-bankruptcy law, the Bankruptcy Code, or any other statute, legal theory, or theory under equity and (ii) claims of the Debtors against any former or current directors or officers arising under state or other non-bankruptcy law or arising under the Bankruptcy Code, these chapter 11 cases, or in any way related to these chapter 11 cases, or under and/or pursuant to any statute or legal or equitable theory that is any manner arising from, connected with, or related to any act or omission of such director or officer that occurred prior to the Effective Date.  Moreover, unless otherwise released by the Plan, the Wind-Down Debtors expressly reserve all Causes of Action against all Entities, as well as their affiliates, parents, subsidiaries, successors, or assigns, including, but not limited to, Causes of Action:
- or overpayments, back charges, duplicate payments, improper holdbacks, deposits, warranties, guarantees, indemnities, recoupment, contribution or setoff;
- for wrongful or improper termination, suspension of services or supply of goods or services, or failure to meet other contractual or regulatory obligations;
- for failure to fully perform or to condition performance on additional requirements under contracts with the Debtors before the assumption or rejection, if applicable, of such contracts;
- for payments, deposits, holdbacks, reserves or other amounts owed to the Debtors;
- for any liens or security interests, including mechanic's, artisan's, materialmen's, possessory, statutory liens and rights of setoff held by the Debtors;
- for any environmental or contaminant exposure matters against landlords, lessors, surface owners, predecessors in interest, environmental consultants, environmental agencies, or suppliers of environmental services or goods;
- concerning counterclaims and defenses related to any contractual obligations;
- for unfair competition, interference with contract or potential business advantage, breach of contract, infringement of intellectual property, or any business tort claims;
- for the commission of any tortious act against any Debtor; and
- for any other legal or equitable cause of action or remedy that is just and reasonable under the circumstances.

For the avoidance of doubt, subject to any applicable consent rights contained in the Plan, the Debtors reserve all rights to amend, revise, or supplement the Plan Supplement, and any of the documents and designations contained therein, at any time before the Effective Date of the Plan, or any such other date as may be provided for by the Plan or by order of the Bankruptcy Court.

**EXHIBIT D**

**Other Litigation Matters**

| Case Caption | Nature of Litigation |
|---|---|
| Lotus, LLC v. Basic Energy Services, L.P. and Agua Libre Midstream, LLC; No. 22627; 109th District Court, Andrews County, Texas | Collection Litigation |
| Craft, Marshall Et Al. v. BES and Aqua Libra (Stanley SWD #1), 53-2020-CV-01390; 215th District Court, Harris County, Texas | General Liability |
| Frank's Tanks & Trucking, LLC v. Agua Libre Midstream Production, LLC & Agua Libra Holdco, LLC; CC23265, Midland County Court at Law | Collection Litigation |
| D & JD Services, Ltd. d/b/a Chemical Services Co. v. Basic Energy Services, Inc. C&J Energy Services, & Agua Libre Midstream, LLC; Case 22147;. 109th District Court, Andrews County, Texas | Collection Litigation |
| Warren Power & Machinery, Inc. v. Taylor Industries, LLC; No. CC23379, Midland County Court at Law, Texas | Collection Litigation |
| Broken Arrow Electric Supply, Inc.; No. CS-2021-01999; District Court of Tulsa County, Oklahoma | Collection Litigation |
| Mertz Manufacturing, Inc. v. Taylor Industries, LLC, Basic Energy Services, L.P., and Basic Energy Services, Inc.; 236-318890-2; 236th District Court of Tarrant County, Texas | Collection Litigation |
| Morgan v. BES, LP, GP, LLC, and Inc.; No. 9806 | Litigation (Plaintiff) |
| Basic Skyvue, CC-2021-CV-0019; County Court at Law #2, Lubbock County, Texas | Collection Litigation |

| | |
|---|---|
| Jilpetco; 236-316433-20; 236th District Court of Tarrant County, Texas | Litigation (Plaintiff) |
| Carr v. Mosly (C&J); 630-18; 115th District Court, Upsur County | Auto Liability |
| TRETO; 20-33193 (MI); in the United States Bankruptcy Court for the Southern District of Texas | Litigation (Plaintiff) |
| Shale Energy; 20-10-20672; in the 106th District Court of Dawson County, Texas | Litigation (Plaintiff) |
| Petroleum Recovery; 20-10-60685-CV; County Court at Law of Jim Wells County, Texas | Litigation (Plaintiff) |
| Pearl Opco; 096-317625-20; 96th District Court of Tarrant County, Texas | Litigation (Plaintiff) |
| Avalon Operating; CJ-18-87; District Court of Carter County, Oklahoma | Litigation (Plaintiff) |
| NBI; 18-11123-M; 202nd District Court of Bowie County, Texas | Litigation (Plaintiff) |
| Cummings v. Zapata-Gomez; 153-31541620; 153rd District Court, Tarrant County, Texas | Auto Liability |
| Hydro Geo; 348-313421-19; 348th District Court of Tarrant County, Texas | Litigation (Plaintiff) |
| Husky; CJ-2020-8; District Court of Blaine County, Oklahoma | Litigation (Plaintiff) |
| Hellifino; DAC-19-04661; 119th District Court of Concho County, Texas | Litigation (Plaintiff) |
| Gulf Production; No. 61261; 25th District Court for the Parish of Plaquemines, Louisiana | Litigation (Plaintiff) |
| Olvera v. BES, L.P. and Chesapeake; FJ-2019-1614; District Court of Oklahoma County, Oklahoma | General Liability |

| | |
|---|---|
| Dune, et al.; 15-10336; in the United States Bankruptcy Court for the Western District of Texas | Litigation (Plaintiff) |
| NBI; 18-11123-M; United States Bankruptcy Court for the Northern District of Oklahoma | Litigation (Plaintiff) |
| Lilis Energy; 20-33274 (MI); 109th District Court of Winkler County, Texas | Litigation (Plaintiff) |
| Lackey v. Key Rig Energy Services, Inc. and James Stein; 2021-04368; 113th District Court of Harris County, Texas | General Liability |
| Faith Petroleum; 153-313966-19; 153rd District Court of Tarrant County, Texas | Litigation (Plaintiff) |
| Safari Production; 348-300249-18; 348th District Court of Tarrant County, Texas | Litigation (Plaintiff) |
| Progress Drilling, Inc.; 202-724-CCL2; in the County Court at Law No. 2 of Gregg County, Texas | Litigation (Plaintiff) |
| Petrostandard; 18-02-00347CVF; 218th District Court of Frio County, Texas | Litigation (Plaintiff) |
| Basic v. Myersauto; JP02-21-SC00022386; in the Justice of the Peace Court #2, Tarrant County, Texas | Collection Litigation |
| Lilis Energy; 20-33274 (MI); in the United States Bankruptcy Court for the Southern District of Texas | Litigation (Plaintiff) |
| B.J. Services; 20-33627; in the United States Bankruptcy Court for the Southern District of Texas | Litigation (Plaintiff) |
| La Sara, et al.; 2015-CV-0114-A; 197th District Court of Willacy County, Texas | Litigation (Plaintiff) |
| Helia TEC; 13-36251 (DRJ); in the United States Bankruptcy Court for the Southern District of Texas | Litigation (Plaintiff) |

| | |
|---|---|
| Helia TEC; 13-36251 (DRJ); 434th District Court of Fort Bend County, Texas | Litigation (Plaintiff) |
| Global Frontier/Alaron Energy; 18-DCV-255244; 268th District Court of Fort Bend County, Texas | Litigation (Plaintiff) |
| Blackline Energy; 096-322941-21; 96th District Court of Tarrant County, Texas | Litigation (Plaintiff) |
| BEP Operating, LLC; 16774; 32nd District Court of Mitchell County, Texas | Litigation (Plaintiff) |
| P&A Operating; 6714; 109th District Court of Crane County, Texas | Litigation (Plaintiff) |
| Odessa Pumps and Equipment, Inc. v. Basic Energy Services, L.P.; 2020-71531; 234th District Court of Harris County, Texas | Collection Litigation |
| Thomas Oil Tools v. Scott and BES LP; CJ2020163; Carter County | Auto Liability |
| Guzman, Jorge, et al. v. Banda, Adan, and BES; 54691; 188th District Court of Howard County, Texas | Auto Liability |
| Dansby v. Guardado; C2031637; 145th District Court, Nacogdoches, Texas | Auto Liability |
| New Distributing Co., Inc. v. Basic Energy Services, L.P.; CIV2-20443; Victoria County Court at Law No. 2 | Collection Litigation |
| Smart Chemical Services, LP v. Basic Energy Services, LP; CC23274; County Court at Law of Midland County, Texas | Collection Litigation |
| Delmar Exploration; CC16828; County Court at Law of Midland County, Texas | Litigation (Plaintiff) |
| Peterbilt of Wyoming v. Basic Energy Services LP; CV-2020-1473-J; Circuit Court for the 3rd District, Sweetwater County, Wyoming | Collection Litigation |

| | |
|---|---|
| Diaz, Daniel Flores v. BES, Inc., L.P., and G.P.; CV57392; 385th District Court of Midland County, Texas | General Liability |
| Mertz Manufacturing, Inc. v. Taylor Industries, LLC, Basic Energy Services, L.P., and Basic Energy Services, Inc., 236-318890-2; 236th District Court of Tarrant County, Texas | Collection Litigation |
| Economy Mud Products Company DBA Economy Polymers v. Basic Energy Services, LP; 202063709; 133rd District Court of Harris County, Texas | Collection Litigation |
| Buckeye, Inc. v. Basic Energy Services, LP; CC23334; Midland County Court at Law | Collection Litigation |
| Braxton Services, Inc. v. Basic Energy Services, LP; 2020-2190-CCL2; District Court, Gregg County, Texas | Collection Litigation |
| Big Six Torque and Test, LLC v. Basic Energy Services, L.P., Basic Energy Services, Inc. dba BES Holding, Inc. and Basic Energy Services GP, LLC; 2020-12-24629CV; 2nd/25th District Court, Lavaca County, Texas | Collection Litigation |
| Warrior Supply, Inc. v. Basic Energy Services, LP, Basic Energy Services, Inc. dba BES Holdings Inc. and Basic Energy Services GP, LLC; 201286717A; 24th District Court, Victoria County | Collection Litigation |
| Joshua Points & Jesse Hernandex v. C&JWS, BES; BCV-20-102483 and BCV-20-102487; Superior Court of California, County of Kern | HR Legal Issues |
| Audit of Texas Sales and Use for Tax Periods 2010-2013 | Tax Audits |
| Thunder Basin; CV-2018-0615; 8th District of Niobrara County, Wyoming | Litigation (Plaintiff) |

| | |
|---|---|
| Bend Arch; 20-05-035; 271st District Court of Jack County, Texas | Litigation (Plaintiff) |
| Banner; CV20-009; 51st District of Irion County, Texas | Litigation (Plaintiff) |
| Audit of Texas Fuel/Excise Taxes for periods 2017-2020 | Tax Audits |
| Audit of Orange County, California Taxes for periods 2015-2018 | Tax Audits |
| Audit of Wyoming Sales and Use Tax for periods 2017-2020 | Tax Audits |
| BES v. Craneworks; 2020-69148; 215th District Court; Harris County, Texas | General Liability |
| Audit of Texas Sales and Use for periods 2014-2016 | Tax Audits |
| Craft, Marshall et al. v. BES and Aqua Libre (Stanley SWD #1); 53-2020-CV-01390 | General Liability |
| Wage Claim; TWC Claim # 20 058469 4 | HR Legal Issues |
| TWC/EEOC Charge; EEOC Charge # 453-2020-01404 | HR Legal Issues |
| US Petromex; C-3733-20-F | Litigation (Plaintiff) |
| Simplot AB Retail, Inc., d/b/a Simplot Grower Solutions v. Basic Energy Services, L.P. and Basic Energy Services GP, LLC; 2021-01747; 125th District Court of Harris County, Texas | Collection Litigation |
| Earth Energy and Environmental Solutions, LLC v. Basic Energy Services, L.P. and Maverick Stimulation Company, LLC; 2020CV30074; District Court of Morgan County, Colorado | Collection Litigation |
| Canadian River; 42654; 84th District Court of Hutchinson County, Texas | Litigation (Plaintiff) |

| | |
|---|---|
| Audit of Texas Sales and Use for periods 2017-2019 | Tax Audits |
| Arcooil Corporation | Litigation (Plaintiff) |
| Pedro de la Rosa et al. v. Basic Energy Services CV52579; 441st District Court of Midland County, Texas | General Liability |
| Blue Water Resources, Inc. | Litigation (Plaintiff) |
| Blackline Energy; Civil District Court, Fort Worth Texas | Litigation (Plaintiff) |
| Attis Operating | Litigation (Plaintiff) |
| Basic.BraxtonServices (2020); 2020-2190-CCL2; District Court, Gregg County, Texas | Litigation (Plaintiff) |
| Double Eagle | Litigation (Plaintiff) |
| Atropos Production Corporation | Litigation (Plaintiff) |
| Helia TEC | Litigation (Plaintiff) |
| Aqua Terra | Litigation (Plaintiff) |
| 3-T Exploration | Litigation (Plaintiff) |
| Sourthern Oil & Gas, LLC | Litigation (Plaintiff) |
| Performance Energy Services, LLC | Litigation (Plaintiff) |
| Patriot Production, LLC | Litigation (Plaintiff) |
| Nor-Cal Pump & Well Drilling, Inc. | Litigation (Plaintiff) |
| Flores and Rodriguez v. BES, and Rodriguez-Ruiz; 20-01-23381-CVR | Auto Liability |
| Victor Soto v. Basic Energy Services LP and C&J Energy Services; 21stCV-29579; Central District Court, County of Los Angeles, California | HR Legal Issues |

| | |
|---|---|
| Basic Tradecredit; 2021-005005-3; Tarrant County Court at Law #3 | Collection Litigation |
| Morgan v. BES LP, GP, LLC, and Inc.; 9806 | Litigation (Plaintiff) |
| Southwestern Production 2020 | Litigation (Plaintiff) |
| PPC Energy, LP and Priest Petroleum; 20-01-23355-CVR; 143rd District Court, Reeves County, Texas | General Liability |
| D90 | Litigation (Plaintiff) |
| Titan Energy | Litigation (Plaintiff) |
| BNR Operating | Litigation (Plaintiff) |
| Relentless Permian Operating | Litigation (Plaintiff) |
| Polaris Operating | Litigation (Plaintiff) |
| Permian Disposal Services, LLC | Litigation (Plaintiff) |
| P&A Operating; Crane County District Court, Texas | Litigation (Plaintiff) |
| Lilis Energy; Andrews County District Court, Texas | Litigation (Plaintiff) |
| LA Sara; Willacy County District Court, Texas | Litigation (Plaintiff) |
| Ampak | Litigation (Plaintiff) |
| Almanza v. Spartan and FDL; D-1-GN-19-003181; 126th District Court, Irion County, Texas | General Liability |
| Alejandro v. Soto and BES LP; C-316-21-L; 464th District Court, Hidalgo County, Texas | Auto Liability |
| Ramirez v. Basic Energy and Jorge Pinedo; 6997; 109th District Court, Crane County, Texas | Employee Related Proceedings |

| | |
|---|---|
| D-Mil Production, Inc. | Litigation (Plaintiff) |
| Henderson, Ed. V. Citation Oil & Gas Corp., Sendero, Sprint & Sierra; 201910244; 164th District Court, Harris County, Texas | General Liability |
| Garza, Manuel v. Coastal Drilling Land Company, LLC; 2019DCV-1121-E; 148th District Court, Nueces County, Texas | General Liability |
| Double Play Oil & Gas, Inc. | Litigation (Plaintiff) |
| Cholla (Foxtrot 1H) v. BES; 20095 | General Liability |
| Thomas, S. v. Basic Energy Svs.; DCC201900741; 249th District Court, Johnson County, Texas | General Liability |
| Aguilar v. Basic Energy Services, L.P. and Adkins 21674; 109th District Court, Andrews County, Texas | General Liability |
| Rodriguez v. Applewhite; 2019-007783-3; County Court at Law No. 3, Tarrant County, Texas | Auto Liability |
| Livingston v. BES and Fairchild; 2019-335; 4th District Court, Rusk County, Texas | Auto Liability |
| Kickapoo Tribe: Sanchez, Jimenez, Esperanza, and Suke v. Rizo and BES; 19-01-36805-MCVAJA; 365th District Court Maverick County, Texas | Auto Liability |
| Fraire v. BES, Maldonado and Up; 18-11-22703-CVR; 143rd District Court, Reeves County, Texas | Auto Liability |
| De la Rosa et al. v. BES; CV52579; 441st District Court, Midland County, Texas | General Liability |
| Sunoco, LLC v. Basic Energy Services, LP and its General Partner Basic Energy Services, GP LLC; No. 2021-CCV- | Collection Litigation |

| | |
|---|---|
| 60489-4; County Court at Law, Nueces County, Texas | |
| Payne v. Continental Resources; 1:20-CV-050; in the United States District Court of North Dakota | General Liability |
| Avalon Operating; Carter County, Oklahoma | Litigation (Plaintiff) |
| Verdun Oil | Litigation (Plaintiff) |
| Baylor Operating | Litigation (Plaintiff) |
| Schwartz Farms, Inc. v. BES, L.P.; 1780; 118th District Court of Reeves County, Texas | General Liability |
| Jerry Osborn v. Basic Energy Services, LP and Robert James Humphus; 017-32661-21; 17th District Court, Tarrant County, Texas | Auto Liability |
| Silva, Miguel v. Niblett's Oilfield Services, Inc., et al.; 3378; 51st District Court; Schleicher County, Texas | General Liability |
| Viper S.W.D., LLC v. Basic Energy Services, Inc. a/k/a Basic Energy Services and Basic Energy Services, LP a/k/a Basic Energy Services; No. CV-529055; 23rd District Court, Wharton County, Texas | Collection Litigation |
| Tanos Exploration II, LLC v. BES, L.P. and Wooley Tool, Inc.; 20-0780-A; 7th District Court, Smith County, Texas | General Liability |
| Rafter A Services, LLC v. Basic Energy Services, LP; No. CV57553; 142nd District Court, Midland County, Texas | Collection Litigation |
| Pape Trucks Inv. d/b/a Pape Kenworth v. Basic Energy Services LP, a Delaware entity f/k/a C&J Energy Services, Inc.; Basic Energy Services, Inc., an unknown entity f/k/a C&J Energy Services, Inc.; | Collection Litigation |

| | |
|---|---|
| No. BCL-21-012130; Superior Court of California, County of Kern | |
| Lotus, LLC v. Basic Energy Services, L.P. and Agua Libre Midstream, LLC; No. 22,261; 109th District Court, Andrews County, Texas | Collection Litigation |
| Fesco, Ltd. v. Basic Energy Services, LP and John Doe; No. 21-07-61270-CV; Jim Wells County Court at Law, Texas | Collection Litigation |
| Cheyenne Oil Properties, Inc. | Litigation (Plaintiff) |
| Warrior Supply, Inc. v. Basic Energy Services, L.P., Basic Energy Services, Inc. d/b/a BES Holding, Inc. and Basic Energy Services GP, LLC; 24th District Court, Victoria County, Texas | Collection Litigation |